FIRST NATIONAL BANK OF DURAND *v.* SHAW.

1. BILLS AND NOTES—GUARANTY—NEGOTIABILITY.
   A guaranty of payment indorsed on a promissory note before delivery is negotiable in the same manner as an indorsement. *Green* v. *Burrows,* 47 Mich. 70, followed.

2. SAME—FORGERY—TRANSFER IN DUE COURSE.
   The forgery of a part of the signatures on a promissory note does not invalidate the instrument, as to the genuine signatures, in the hands of a holder in due course.

Error to Presque Isle; Emerick, J. Submitted April 8, 1909. (Docket No. 19.) Decided June 7, 1909.

Assumpsit by the First National Bank of Durand against Thomas E. Shaw and others upon a promissory note. A judgment for plaintiff is reviewed by defendants on writ of error. Affirmed.

*Charles R. Henry* (*De Vere Hall,* of counsel), for appellants.

*Odell Chapman,* for appellee.

OSTRANDER, J. This case has once before been in this court, and is reported in 149 Mich. 362, 366 (112 N. W. 904, 905, 13 L. R. A. [N. S.] 426). In the opinion which was filed, after a citation of authorities, it is said:

"These cases are not conclusive of the question involved here. An examination of the cases will not show one where part of the signatures were genuine and part forgeries, which had been placed thereon before the note was executed and delivered. Nor will they show a case where the alteration was made before the note was delivered. We think this is an important distinction."

The opinion concludes as follows:

"In the case at bar a joint and several note, purporting

to have been signed by 20 persons, is before maturity put afloat. There is nothing in its appearance to cast doubt upon any of the signatures. A bank becomes a bona fide holder of the note. It turns out that some of the signatures are forged. If we apply the principles of law stated in the cases to which we have called attention, is it not clear that the signers whose signatures are genuine are liable? We think the answer must be in the affirmative."

A judgment for the defendants was reversed, and a new trial ordered.

The record did not disclose who was responsible for the forged signatures to the note. The case has been again tried. As to the defendants who admittedly signed the note, a verdict was directed in favor of the plaintiff; the court saying to the jury that it appeared beyond dispute that the plaintiff bought the note in due course, before maturity, for value. In answer to special questions, the jury found that the names of five signers of the note were forged, and that none of the makers participated in the forgery or had any knowledge of it. To the question, "Did Comstock & Crawford, the payees named in said note, by themselves, or their agents, procure all the forgeries (if they exist) to said note?" the jury answered, "Yes." It is therefore contended that the forged signatures were not placed upon the note before it was executed and delivered, and that this fact serves to distinguish the case now presented and the case which was presented upon the other record. It also appears, as it appeared upon the former record, that the payees of the note (the note was made in 1901, payable to Comstock & Crawford, or order, with interest at 6 per cent. per annum) transferred the note to the plaintiff before maturity, for value, indorsing upon the back of it their guaranty, as follows:

"For value received, we hereby guarantee the payment of the within note at maturity or at any time thereafter, with interest at 6 per cent. per annum until paid, and
157 MICH.—13.

agree to pay all costs and expenses paid or incurred in collecting the same, waiving protest, notice and demand of payment.

"COMSTOCK & CRAWFORD."

No other indorsment appears upon the note. It is contended that this was not a transfer of the note in due course, and that the guaranty written upon the note is not equivalent to an indorsement within the meaning of the law merchant. This last contention is ruled, against the appellants, by *Green* v. *Burrows*, 47 Mich. 70 (10 N. W. 111). In *Phelps* v. *Church*, 65 Mich. 231 (32 N. W. 30), in which the rule of *Green* v. *Burrows* is approved without referring to the case itself, an examination of the briefs discloses that appellants relied, as they do here, upon *Central Trust Co.* v. *National Bank*, 101 U. S. 68, and the appellee relied upon *Green* v. *Burrows*. See, also, 1 Randolph on Commercial Paper (2d Ed.), § 14. We think the profession, generally, have regarded the rule of *Green* v. *Burrows* as the law of this State upon this subject. We pass, therefore, to the consideration of the question whether the particular note is valid and enforceable in the hands of the plaintiff.

The note is one of a series of notes, the face value of which is $2,000, which the payees sold to the plaintiff for $1,880. The notes were given for the price of a stallion sold to the makers by Comstock & Crawford, who employed in making the sale one James Morgan. He employed others—whether with the knowledge and consent of the payees is not very clear. The testimony of Gibbs tends to show: That he saw each of the men whose names appear upon the note sign the same; that he was engaged to help sell the stallion; that he was to receive $100 if he sold the horse, and his expenses; that before the note was executed he and Mr. Morgan had procured the signatures of the makers on a contract book in which a contract was printed, to which Comstock & Crawford were parties; that he and Mr. Morgan were in every instance together when the parties signed the note;

that they were a little over a week in getting the names on the book and on the notes; that Morgan, and not he, carried the notes. The testimony of Morgan tends to prove: That he saw each of the parties sign the note; that the payees of the note were paying him at the time about $150 a month; that he was not acquainted with any of the men whose names appear upon the notes as makers before he visited them in this behalf; that before the notes were executed he and Gibbs had procured the signatures of the men whose names appeared upon the note to a contract which was printed in a book, in which they agreed to sign notes or pay cash for the horse; that the signatures on the notes were those on the book, but whether there were more signatures on the book than on the notes he could not remember. The book was not produced at the trial. It is to be inferred that the plan, originating with Comstock & Crawford, was to induce a number of persons to agree to purchase a breeding stallion, to assist such persons in forming some sort of an organization, and to deliver to each one when a note was signed or cash was paid a certificate reading:

"Capital Stock, $2,000.00    No. 19    No. Shares 20
        "CERTIFICATE OF STOCK
    "This is to certify that we have received of J. H. Deitrich his notes for one hundred dollars, in full payment for his one share of one hundred dollars, in the Percheran Stallion named Bambin No. 27229.
    "Dated at Onaway, county of Presque Isle, State of Michigan, this 18th day of November, 1901.
                            "COMSTOCK & CRAWFORD."

The testimony of the witness Morgan tends to prove: That such a certificate as that was delivered to each of the 20 men whose names appeared upon the note in suit; that after the notes had been procured they were delivered, with the book, to Comstock & Crawford; that besides employing Gibbs he also employed one Olmstead, John Dewitt, and Bryan and Walker to assist him. Just what these gentlemen did in the premises does not appear. It is the claim of appellants that:

"In each instance where the note was signed in this case, it was taken immediately after it was signed by one of the 20 makers into the possession of the payees, * * * so that as to the signature of each one of the 15 who actually signed the note the same was delivered when it passed from their hands."

Upon this theory is built, in part, the contention that there was a fraudulent and material alteration of the note after it was executed and delivered, and it is said that the applicable rule is to be found stated and applied in *Bradley* v. *Mann*, 37 Mich. 1, and in *Aldrich* v. *Smith*, 37 Mich. 468 (26 Am. Rep. 536). The alleged forged signatures appear as the 3d, 7th, 12th, 16th, and 18th signatures to the note. It is further contended that this note, when it was uttered, was not the genuine note of any of the makers, that those who signed it before a forged signature was placed upon it are relieved because as to them there was a material alteration of the paper, and those who signed after a forged signature was added are relieved for the same reason, and for the additional reason that the paper presented to them for their signatures was not the paper they agreed to sign and supposed they were signing. It may be admitted that a principal cannot ratify the fraud of an agent by accepting a note, the fruit of such fraud, and claim to be a good-faith holder, because the agent failed to acquaint him with the circumstances under which he procured the note; the principal being led to believe that it was taken in the regular course of business. *Johnston Harvester Co.* v. *Miller*, 72 Mich. 265, 275 (40 N. W. 429, 16 Am. St. Rep. 536). It is not claimed, either, that the payee of a note or any transferee thereof may recover thereon against one who did not in fact sign it or authorize his signature to be made, or upon a note not delivered by the maker or upon a note materially altered after delivery by the maker or makers, or upon one delivered by the maker supposing it to be a different contract or paper; he acting without any negligence. And it has been held that a material alteration of the con-

tract of the indorsers, by the maker of the note, before it was discounted, released both indorsers. *Aldrich* v. *Smith, supra.* And where the maker, after the note was indorsed, wrote into the face of the note an interest clause without the consent of the indorser, and discounted the note in due course, it was held the indorser was relieved. *Bradley* v. *Mann, supra.* Compare *Weidman* v. *Symes*, 120 Mich. 657 (79 N. W. 894, 77 Am. St. Rep. 603).

It remains, however, that the note in suit is the genuine note of 15 of the makers. The indorsement is genuine. The holder is innocent. The makers were vendees, and the payees were vendors of the property in payment for which the note was executed and delivered. The note was not altered before or after its delivery, whether we consider it to have been delivered by each maker or, finally, to the payees. The real complaint of the appellants is that by arrangement between themselves and the payees or their agents or employés there were to have been 20 signatures to the note; whereas, in fact there are but 15 genuine signatures. They voluntarily intrusted the note with their signatures to the payees or their agent or agents, and complain of a breach of the confidence reposed. The case now presented cannot be distinguished from the case as first presented in this court.

The judgment is affirmed.

Blair, C. J., and Moore, McAlvay, and Brooke, JJ., concurred.