[Civ. No. 2677.   Third Appellate District.—February 2, 1924.]

J. J. KELLY et al., Plaintiffs and Appellants, v. UNIVERSAL OIL SUPPLY COMPANY (a Corporation), et al., Respondents; GLENDALE NATIONAL BANK, Cross-complainant and Appellant.

[1] NEGOTIABLE INSTRUMENTS—NOTE SECURED BY MORTGAGE—ASSIGNMENT—DEFENSES—EQUITY—ESTOPPEL.—Under the law in effect at the time of assignment, the note, being secured by a mortgage, having been non-negotiable, the assignee took it subject to all existing equities and defenses in favor of the makers, unless they were estopped, by their declarations, to assert such equities and defenses.

[2] ID.—DECLARATIONS OF MAKER—SUPPRESSION OF FACTS—ESTOPPEL. Where such note and mortgage were executed at the same time and in connection with an agreement for an oil lease which pro-

vided that if drilling was not commenced within four months the note and mortgage were to be canceled, but neither the note nor the mortgage made any reference to that fact, and the makers, knowing that the payee intended to negotiate the note and mortgage, and with the intention of assisting him in doing so, delivered to him a written declaration wherein, after acknowledging the execution of the note and mortgage and the amount due thereon, they expressly declared that they had "no off-sets, claims nor defense against said note," and they made no reference to the agreement in connection with which the note and mortgage were executed, they were estopped from pleading such agreement as a defense to an action by the assignee for value of the note and mortgage; and it was immaterial that the consideration for which the note and mortgage was given did not fail until after the declarations constituting the estoppel were made.

[3] ID.—ASSIGNMENT AS SECURITY — JUDGMENT — EXCESS. — Where a note and mortgage are assigned for the purpose of security only, and in an action to cancel said note and mortgage because of failure of consideration both the assignor and the assignee are made parties defendant, and the trial court finds that, because of their acts and declarations, the makers are estopped to assert the defense of failure of consideration as against the assignee, and gives the latter judgment against the makers for the full amount to which it is individually entitled, the assignee may not complain because it is not given judgment for the full amount of the note.

APPEAL from a judgment of the Superior Court of Tulare County.   J. A. Allen, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Middlecoff & Ham and Power & McFadzean for Plaintiffs and Appellants.

Hocker & Austin for Defendant and Appellant.

No appearance for Respondents.

FINCH, P. J.—Plaintiffs brought this action for the cancellation of an agreement, a lease and a promissory note and mortgage.   The defendant Glendale National Bank filed a cross-complaint to recover the amount of the promissory note and to foreclose the mortgage.   The action was dismissed as against defendant Hoggins.   The bank held the note and mortgage as security for a loan made by it to de-

fendant Hamil in the sum of $3,500. The court gave the bank judgment against plaintiffs for the sum of $3,500 and unpaid interest and counsel fees in the sum of $350 and entered judgment in favor of plaintiffs against the other defendants for the cancellation of all the aforesaid instruments. The plaintiffs and the bank have appealed on a single record. The question raised by the appeals is whether the facts found by the court support the judgment. The findings of the court are substantially as follows:

October 28, 1920, plaintiffs agreed to lease certain lands to Hoggins for a term of twenty years ''for the purpose of mining and prospecting for oil and gas.'' The agreement provided that Hoggins should begin drilling operations within four months after the execution of the lease and ''pay a royalty of one-sixth of all oil taken from the ground''; that within thirty days Kelly would purchase from Hoggins 5,000 shares of the capital stock of the defendant company for the sum of $5,000, ''to be paid by the execution of a note by said Kelly and his wife,'' payable three years after date, with interest at seven per cent per annum, payable quarterly, and secured by a mortgage on other lands belonging to Kelly; that ''the five thousand dollars above mentioned is to be expended in the development of the lease''; that ''if drilling is not commenced within the time mentioned, in the above, the lease herein mentioned shall be canceled and the sale of stock rescinded.'' The ''plaintiffs expected and intended that said R. C. Hoggins should negotiate the sale of said promissory note and mortgage and use the proceeds thereof in developing the lease therein mentioned.'' November 6, 1920, the lease provided for by the agreement was executed. On the same day Kelly purchased 5,000 shares of the capital stock of the defendant company and he and his wife, Ione Kelly, in payment therefor, gave Hoggins their promissory note, as provided in the agreement, in the usual form, secured by a mortgage, executed by them, on lands other than those leased. Neither the note nor mortgage contains any reference to the purchase of the stock or to the aforesaid agreement or lease, but the execution of all of said instruments constituted one transaction as between the parties thereto. December 5, 1920, for the purpose of assisting Hoggins ''to negotiate said note and mortgage,'' Kelly caused the National Bank of Bakersfield to telegraph Hog-

gins an appraisement of the property mortgaged, and the next day, for the same purpose, Kelly and his wife executed and delivered to Hoggins the following writing:

"Pacific Mortgage Company,

"Los Angeles, California.

"Gentlemen:

"Replying to your request of recent date will say, that I am the maker of the Promissory Note dated November 6, 1920, in favor of R. C. Hoggins, secured by Mortgage recorded in Book 177, Page 496 of Mortgages in Tulare County California, and covering 215 acres of land described in said mortgage; that I am the owner of the premises covered by said mortgage; that the unpaid balance of the mortgage is $5,000.00; that the interest on said note is at the net rate of seven per cent (7%) per annum; that I have no off-sets, claims nor defense against said note except as stated above.

"I understand that it desired to assign said note and mortgage.                    Very truly yours,

"(Signed)   J. J. KELLY

"IONE KELLY."

"Said writing was not made in response to any inquiry from the Pacific Mortgage Company and was not delivered to said Pacific Mortgage Company, but was delivered to said R. C. Hoggins with the intention and expectation of having said R. C. Hoggins exhibit the same to whomsoever he might wish and to assist the said Hoggins in negotiating said note and mortgage." December 8, 1920, Hoggins exhibited the foregoing telegram and written statement to defendant Hamil and sold and assigned the note and mortgage to him for the sum of $4,600, which Hamil paid to Hoggins. December 14, 1920, Hamil exhibited the telegram and statement to the Glendale National Bank and the bank, relying thereon, and, without knowledge or notice of any of the aforesaid terms and conditions upon which the note and mortgage were executed, "or that there was any condition attached to said note," loaned Hamil $3,500 and took an assignment from him of the note and mortgage as security for the loan. Plaintiffs were not notified of the assignment to Hamil prior to May 3, 1921, nor of the assignment to the bank until the commencement of this action, July 29, 1921.

No drilling operations were ever commenced on the leased lands. June 7, 1921, plaintiffs gave notice of rescission of

the foregoing agreement and lease to defendants Hoggins, Hamil, and Universal Oil Supply Company, offered to return the 5,000 shares of capital stock and demanded the return of the note and the release of the mortgage. The note became due and payable before the action was commenced because of plaintiffs' default in payment of interest. Hamil was a director of the defendant company.

[1] Since the note was secured by a mortgage it was non-negotiable under the law in force at the time of the assignments thereof. (*Pitman* v. *Walker*, 187 Cal. 667 [203 Pac. 739].) The bank therefore took it subject to all existing equities and defenses in favor of the plaintiffs unless they were estopped, by their written declarations, to assert such equities and defenses. "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962, subd. 3.) [2] It is not contended that the declaration would not estop plaintiffs as to any defense existing at the time the declaration was made and acted upon, but it is urged that the consideration for which the note was given failed after the declaration was made and that, therefore, the plaintiffs are not estopped thereby, since they could not have known of such failure of consideration at the time. The plaintiffs did know at that time, however, that the note and mortgage were to be canceled if Hoggins failed to commence drilling within four months from the date of the lease. Their declaration was intended to influence any person who might contemplate the purchase of the securities, and their deliberate failure to disclose any secret equities or conditions relative thereto, of which they had full knowledge, was such an omission of duty as to preclude them from asserting such equities or conditions against one who has been misled by their statement. One form of deceit is "the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." (Civ. Code, sec. 1710, subd. 3.) It is urged that the bank made no inquiries relative to any equities or conditions attaching to the securities. The answer is that under the written representations made by the

65 Cal. App.—32

plaintiffs, and upon which the bank acted, there was no occasion for inquiry. (*Porter* v. *Johnson,* 172 Cal. 456 [156 Pac. 1022].)

[3] The appellant bank contends that it should have been given judgment for the full amount of the note. Ordinarily the assignee of a chose in action, held as security, may recover the whole amount due thereon. (*Genocchio* v. *Amador,* 67 Cal. 493 [8 Pac. 29]; *Bridge* v. *Connecticut Mut. Life Ins. Co.,* 167 Cal. 774 [141 Pac. 375].) In the latter case it is said, quoting from *Gilman* v. *Curtis,* 66 Cal. 116 [4 Pac. 1094], that the assignor's only interest "is in what remains of it after the advances, for the security of which it was assigned, have been satisfied." Had the bank been given judgment for the full amount of the note, it would have been under obligation to pay Hamil, the assignor, whatever it recovered in excess of the amount due upon his note to it. But Hamil was a party to the action and the court, in effect, found that he was not entitled to such excess by reason of the invalidity of the note as to him. He has not appealed from the judgment. The bank was given judgment for the full amount to which it was individually entitled and therefore has no just cause of complaint. Having all interested parties before it, no reason appears why it was not proper for the court to enter judgment determining the rights of all of them.

The judgment is affirmed on both appeals.

Young, J., *pro tem.,* and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 31, 1924.

All the Justices concurred.