[Civ. No. 7830. First Appellate District, Division One.—December 1, 1931.]

BANK OF ITALY NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. WHITMAN SYMMES, Appellant.

Sterling Carr for Appellant.

Louis Ferrari, J. J. Posner and Cullinan & Hickey for Respondent.

THE COURT.—This action was brought by the Bank of Italy Trust and Savings Association (hereinafter referred to as the bank) against Claude R. King, as temporary receiver for Thomas Day Company, a corporation, and Whitman Symmes, who is the appellant here. It was based on two promissory notes, both negotiable in form, executed by the corporation to the bank. One note, dated November 5, 1925, was for the principal sum of $15,000, and the other, dated December 17, 1927, was for the sum of $6,000. Before their delivery to the bank appellant wrote on the back of each instrument the following:

"For value received I hereby guarantee payment of the within obligation and all renewals or extensions thereof, and I hereby waive presentation, demand, protest, notice of protest and notice of nonpayment.

"WHITMAN SYMMES."

Prior to the commencement of the action the sum of $1,000 was paid on the latter note, leaving a total of $20,000 of principal and interest unpaid on both instruments. ■ Receiver King was appointed as such by the United States District Court of the Northern District of California, and the bank filed with him a claim for the amounts unpaid on the notes. The claim was rejected, whereupon the above court granted the bank leave to sue thereon.

In such a case no personal judgment could properly be awarded against the receiver, who is not personally liable, but only against him in his official capacity, to be paid in the due course of the administration of his trust (*Painter* v. *Painter*, 138 Cal. 231 [94 Am. St. Rep. 47, 71 Pac. 90]; 53 Cor. Jur., Receivers, pp. 362, 363).

Both appellant and the receiver set up in their answers certain transactions which were alleged to entitle them to credits on the notes in suit. Before the trial the bank entered into a stipulation with the receiver which read as follows: "For and in consideration of the allowance of the claim of the Bank of Italy National Trust and Savings Association against the receiver of the Thomas Day Company in the sum of seventeen thousand five hundred ($17,500.00) dollars, in which amount said receiver agrees to allow said claim, said Bank of Italy National Trust and Savings Association hereby agrees to dismiss as against said receiver the above entitled and numbered action. . . . Said Bank of Italy National Trust and Savings Association hereby expressly reserves its right of recourse against Whitman Symmes, one of the defendants in said action, said Whitman Symmes being an endorser on the note which is the subject of said action; and this stipulation to dismiss the above action as to said receiver is not to affect said suit against said Whitman Symmes in any way whatsoever."

Following this a dismissal was filed, which reads as follows: "The above cause of action having been fully settled as to defendant Claude R. King, receiver, is hereby dismissed as to said defendant Claude R. King. This dismissal does not in any respect affect said action as against defendant Whitman Symmes."

By a supplemental answer filed by appellant it was alleged that the above stipulation and dismissal operated to exonerate him from all liability on the notes.

The court found that there should be credited on the notes the sum of $3,064.59, the net amount realized by the bank from the sale of certain property on June 20, 1928, with interest thereon in the sum of $428.06, a total of $3,493.55. It further appears that the receiver subsequent to the dismissal paid to the bank on account of the claim $1750, of which $1653.35 was applied as interest and $96.65 upon the principal. The court accordingly allowed the latter sum as an additional credit, the total credits as found being $3,590.20.

Notwithstanding its findings as above the court entered judgment against appellant for $17,500, and as grounds for the appeal it is contended that appellant was a guarantor merely, and that the court erred in its conclusion that the effect of the stipulation and dismissal was not to exonerate him, and that the judgment in the respects above mentioned is not supported by the findings.

Section 3144 of the Civil Code, which was adopted in 1917 (Stats. 1917, pp. 1531, 1542), as part of an enactment making the law of negotiable instruments of the state of California uniform with the law of other states, provides that "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity". And it has been held in numerous cases—although there is some conflict—that where the payee of a note, for the purpose of negotiating the same, indorses a guaranty thereon combined with a waiver of demand, notice and protest, he becomes an indorser with enlarged liability (8 Cor. Jur., Bills and Notes, sec. 533, p. 354; *First Nat. Bank* v. *Cummings,* 69 Okl. 216 [L. R. A. 1918D, 1099, 171 Pac. 862]; *Rawlins County State Bank* v. *Rummel,* 114 Kan. 597 [220 Pac. 255]; *Hendrix* v. *Bauhard Brothers,* 138 Ga. 473 [Ann. Cas. 1913D, 688, 43 L. R. A. (N. S.) 1028, 75 S. E. 588]; *Vos* v. *Chamberlain,* 139 Iowa, 569 [130 Am. St. Rep. 331, 19 L. R. A. (N. S.) 106, 117 N. W. 269]; *First Nat. Bank* v. *Shaw,* 157 Mich. 192 [133 Am. St. Rep. 342, 121 N. W. 809]; *Hutson* v. *Rankin,* 36 Idaho, 169 [33 A. L. R. 91, 213 Pac. 345]). On the other hand it has been held that a stranger to the instrument who wrote thereon "For value received I hereby guarantee the payment of the within note at maturity, and hereby waive demand, protest and

notice of nonpayment . . . '' was not an ''endorser'', having indicated by the appropriate word ''guarantee'' his intention to be bound in that capacity and not as an indorser. While it has been held that the word ''guarantee'' does not always import a contract of guaranty (*Meyer* v. *Moore*, 72 Cal. App. 367 [237 Pac. 550]), yet in cases involving the same question as in the case at bar it was held that the use of the word clearly indicated the nature of the obligation (*First Nat. Bank* v. *Drake*, 185 Iowa, 879 [171 N. W. 115]; *Noble* v. *Beeman etc. Co.*, 65 Or. 93 [46 L. R. A. (N. S.) 162, 131 Pac. 1006]; *Northern State Bank, etc.*, v. *Bellamy*, 19 N. D. 509 [31 L. R. A. (N. S.) 149, 125 N. W. 888]; *Square Butte State Bank* v. *Ballard*, 64 Mont. 554 [210 Pac. 889]).

We think it sufficiently appears that appellant intended to be bound as a guarantor and not as an indorser. But, however this may be, section 3266a of the Civil Code provides that ''the person primarily liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same; all other parties are secondarily liable''. And, according to section 3201 of the same code, ''a person secondarily liable on the instrument is discharged . . . (5) by a release of the principal debtor unless the holder's right of recourse against the person secondarily liable is expressly reversed; (6) by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable; or unless the right of recourse against such party is expressly reserved''.

In this connection it appears to be well settled that the remedy against a guarantor, depending, as it does, upon a separate contract and not on the terms of the instrument, is not primary but secondary (8 Cor. Jur., Bills and Notes, sec. 113, p. 72; *Northern State Bank* v. *Bellamy, supra; Briscol* v. *American Southern Trust Co.*, 176 Ark. 401 [4 S. W. (2d) 912]). And the same has been held with respect to the obligation of an indorser (*Hudson Trust Co.* v. *Elliott*, 194 Ala. 441 [69 South. 631]; *Westinghouse Elec. etc. Co.* v. *Hupp*, 211 Mich. 698 [179 N. W. 286]; *Clarke* v. *Stumpf*, 190 App. Div. 538 [180 N. Y. Supp. 125]; *Deahy* v. *Choquet*, 28 R. I.

338 [67 Atl. 421]; *Grapes* v. *Willoughby,* 93 Vt. 458 [108 Atl. 421]; *Davis* v. *Gutheil,* 87 Wash. 596 [152 Pac. 14]).

 In view of the above it seems that regardless of whether appellant was a guarantor or an indorser, or assumed the obligations of both, the fact that plaintiff expressly reserved the right to proceed against him would bring the case within the provisions of section 3201 of the Civil Code, and the stipulation and dismissal would not result in his discharge.

Appellant contends, however, that the provisions of section 2819 of the Civil Code, and not the sections quoted, apply. This section reads as follows: "A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor without the consent of the guarantor the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal in respect thereto in any way impaired or suspended." It is claimed that section 3201 of the Civil Code, which was adopted as part of the Uniform Negotiable Instruments Act, has reference solely to indorsements, and did not repeal by implication any section of the code dealing with the rights of guarantors.

It was the object of the Negotiable Instruments Law (Civ. Code, sec. 3082) to secure uniformity in the law of negotiable paper (*Utah State Nat. Bank* v. *Smith,* 180 Cal. 1 [179 Pac. 160]); and as it covers the entire subject it must control in all cases in which it is applicable (*Elsey* v. *Peoples' Bank,* 168 Ky. 701 [182 S. W. 873]). While the repeal of statutes by implication is not favored (*Railroad Com.* v. *Riley,* 192 Cal. 54 [218 Pac. 415]), nevertheless every statute must be construed according to what appears to be the intent of the legislature (*Dillingham* v. *Welch,* 179 Cal. 656 [178 Pac. 512]); and if the later act was clearly intended to prescribe the only rule which should govern in the case provided for, or to establish a new and complete scheme with reference to the subject matter (*Harris* v. *Cooley,* 171 Cal. 144 [152 Pac. 300]), it will be held to have repealed *pro tanto* an earlier act inconsistent therewith (*Ex parte Cannon,* 167 Cal. 142 [138 Pac. 740]).

 The purpose of the act being as stated and section 3201 of the Civil Code having provided for the discharge under certain circumstances of all those secondarily

liable upon negotiable instruments, but expressly denying the right in case of a release of the principal debtor where recourse against those secondarily liable is reserved, it must be held with respect to such instruments that this section controls.

█ There is still another reason for sustaining the conclusion of the trial court. If it be assumed that section 2819 of the Civil Code applies, the act of plaintiff worked no alteration in the obligation of the principal, nor were the remedies or rights of the appellant against the principal impaired or suspended. It is clear from the evidence that after applying the amounts received by the bank the amount of the claim as allowed by the receiver was correct. As stated, a judgment against the receiver would have resulted in no more than an adjudication that the claim should be allowed in that amount; and after its voluntary allowance no advantage would accrue to either the plaintiff or appellant by the entry of judgment; nor did the stipulation or the dismissal release the Thomas Day Company or impair or suspend the remedies of appellant against it. (*Richmond Paper Co.* v. *Bradley,* 115 Miss. 534 [76 South. 544].)

Plaintiff concedes that contrary to the findings appellant was not allowed in the judgment the full amount of the credits, and consents that the judgment be modified by deducting this difference. The judgment is accordingly modified by deducting therefrom the sum of $1090.20, and as so modified is affirmed. It is further ordered that each party bear his own costs of appeal.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 31, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1932.