[L. A. No. 14273. In Bank.—December 29, 1934.]

ADOLPH RAMISH, INCORPORATED (a Corporation), Respondent, v. LEONARD J. WOODRUFF, Appellant.

Francis B. Cobb, Earl J. Opsahl, Edward J. Fitzgerald, Burnett Wolfson, Earl I. Swetow and Louis M. Brown for Appellant.

Harris & Field for Respondent.

CURTIS, J.—When this cause was first presented to us for our consideration, an opinion was rendered reversing the judgment of the trial court. After the rendition of said opinion, a rehearing was granted for the express purpose of permitting the taking of additional evidence, offered by both the appellant and respondent, in order that final judgment might thereafter be rendered by this court, and the litigation thus terminated. We are satisfied with the conclusions reached by us in said opinion upon many of the questions involved in this appeal, and we adopt that portion of said opinion dealing with these questions. The part so adopted is as follows:

"This is an appeal from a judgment rendered in a suit upon a promissory note for $10,000 executed by the defendant, Leonard J. Woodruff, payable to Gavin W. Craig and delivered by Murrey M. Sommerfield as Craig's agent to Adolph Ramish, president of Adolph Ramish, Inc., the plaintiff herein. There is also before us a motion to dismiss the appeal or affirm the judgment as well as a motion to take further evidence.

"Simultaneously with the execution and delivery of the note sued upon, Gavin W. Craig executed and delivered to

Woodruff his promissory note for $10,000. Both notes were dated February 19, 1932, and matured ninety days after date, bearing interest at 7 per cent per annum. It was stipulated at the trial that nothing had been paid on the note from Craig to Woodruff. At the time of the execution of these notes the plaintiff held the promissory note of Gavin W. Craig for $13,500. This note was not put in evidence but testimony was given showing that it matured in February, 1932, and that a thirty-day extension had been given in that month. Craig endorsed the Woodruff note and extended the time of payment thereon and on May 7, 1932, it was delivered to the plaintiff as stated above, but whether as collateral security for the indebtedness of Craig to the plaintiff was one of the issues in the case. The facts will appear with more particularity in connection with the discussion of the points raised by this appeal, but the note sued upon reads as follows:

" '$10,000.00

" 'Los Angeles, California, February 19, 1932

" 'Ninety days after date, for value received I promise to pay to Gavin W. Craig, ...... or order at Los Angeles, California, the sum of Ten Thousand and 00/100 ...... Dollars with interest from date until paid at the rate of seven per cent per annum, payable maturity.

" 'Should the interest not be so paid, it shall thereafter bear like interest as the principal. Should default be made in the payment of any installment of interest when due, then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note. The undersigned (jointly and severally) further promise to pay all costs of collection, including attorney's fees, which may be incurred in the collection of this note, or any portion thereof, and in case suit is instituted for such purpose, the amount of attorney's fees, shall be such amount as the court shall adjudge reasonable. Principal and interest payable in gold coin of the United States of the present standard. The makers, sureties, guarantors and endorsers of this note hereby consent to extensions of time at or after the maturity hereof, and hereby waive diligence, protest, demand and notice of every kind. Should this note be signed by more than one person, firm or corporation, all

of the obligations herein contained shall be considered joint and several obligations of each signer hereof.

"'(Signed) LEONARD J. WOODRUFF'.

"On the back of the note are two endorsements; the second is set out later on in this opinion, the first is as follows: 'Interest paid to May 19–1932. Time for payment of principal extended to July 19th, 1932. Gavin W. Craig.'

"The defendant in his answer admitted the execution and delivery of the note to Craig, but denied the title of the plaintiff on the ground that the note was delivered to him for inspection and investigation only, and set up as defenses that the plaintiff's lien was, at most, for the sum of $6,820 only, that defendant had an offset as against Craig, and that plaintiff was not the holder in due course of the note sued upon.

"We will first consider the arguments that the note was rendered nonnegotiable by the inclusion of the provision with regard to attorney's fees and that it had been materially altered before its delivery to the plaintiff by the extension of time endorsed on the back. On the latter point it is sufficient to point out that the note contained a stipulation that the 'makers, sureties, guarantors and endorsers of this note hereby consent to extensions of time at or after the maturity hereof', and that Craig testified that the extension was in his handwriting and that he made it in the presence of Woodruff. So, if the extension did amount to a material alteration, it was consented to and authorized by the defendant. (Cal. Civ. Code, sec. 3205.)

With respect to the provision for attorney's fees, the contention is made that it does not limit the payment of the costs of collection and attorney's fees to the event that payment is not made at maturity, but provides for their payment in any event, and, since such a provision is not authorized by the negotiable instruments law (Cal. Civ. Code, sec. 3083 [5]), the note is nonnegotiable. We are cited to no California cases directly in point, but we are satisfied the rule must be, as set forth in *Hutson* v. *Rankin*, 36 Idaho, 169 [213 Pac. 345, 33 A. L. R. 91], that 'if a note is paid promptly at maturity no attorney fee or other costs of collection could accrue, and if the c(l)ause here under consideration is to be given its natural and ordinary construction, it means that if the note is collected by an attorney

after maturity, the maker agrees to pay a reasonable attorney fee'. See, also, *Pugh* v. *Dawson,* 95 Cal. App. 505 [273 Pac. 39], upholding, but without discussion of the point, a similar clause which was not in the exact words of the code and did not contain the express limitation 'after maturity'.

■ ''Complaint is made of the finding in paragraph III of the findings of fact and conclusions of law that 'said Gavin W. Craig, endorsed, said note in blank' and that plaintiff was 'the holder of the note herein sued upon for value and in the usual course of business, as collateral security'. The second endorsement on the back of the note is as follows: '......California...... For value received, I hereby waive presentation of the within note to the maker, demand of payment, protest and notice of non-payment, and do guarantee payment of the same, and of all expenses of collection thereof including attorney's fees, incurred in enforcing this guaranty and do hereby without notice, expressly consent to the delay or indulgence of enforcing payment and to the express extension of the time of payment of the same. (Signed) Gavin W. Craig.' The appellant takes the position that the quoted inscription does not amount to a commercial endorsement, but is a mere guaranty and does not operate as a transfer which cuts off the defenses of the maker.

''The problem of whether a transfer by guaranty instead of by the usual form of endorsement operates as an ordinary commercial endorsement has two aspects; first, the passage of title to the transferee, and, second, the liability incurred by the transferor who has made the guaranty. We are here concerned with the first only, since this is a suit by the transferee against the maker, who has set up as a defense his right of offset against the original payee who is also the maker of the guaranty.

''The cases throughout the country are in conflict upon this question and this jurisdiction is not as yet definitely aligned with either group. The respondent cites in its brief *Bank of Italy etc. Assn.* v. *Symmes,* 118 Cal. App. 716 [5 Pac. (2d) 956], which recognizes the conflict but does not decide the point. The issue therein litigated was the release of the party secondarily liable, it being held that it was immaterial whether he was considered as a guarantor or as

an endorser, although the case contains *dictum* to the effect that the engagement was intended as a guaranty and not as an endorsement. While the wording of the undertaking there involved was substantially the same as that here under consideration, it was placed upon the note as an accommodation and before delivery to the original . payee, hence the problem of negotiation was not presented to the court. It should, perhaps, be noticed in passing, that a recent Connecticut case, *Jaronko* v. *Czerwinski*, 117 Conn. 15 [166 Atl. 388, 90 A. L. R. 299], has held that accommodation endorsers who employ the form of a guaranty incur the successive liability of endorsers rather than the contributive liability of guarantors. In *Thurber* v. *Fisher*, 124 Cal. App. 312 [12 Pac. (2d) 481], the District Court of Appeal indicated its willingness to follow those cases which hold such a guarantor to be an endorser with enlarged liability. However, this court has held that an intention not to be bound as a general endorser might be shown where the endorsement contained the following expression: 'I hereby sell, set over and assign the within note, . . . and hereby guarantee that this is a good, valid and subsisting promissory note,' and that, where such intention existed, the endorsement was qualified. (*Cristina* v. *Mattenberger*, 212 Cal. 670 [300 Pac. 450], citing *Hammond Lumber Co.* v. *Kearsley*, 36 Cal. App. 431 [172 Pac. 404]; and see note, 19 Cal. Law Rev. 324.) In all of these cases the action was instituted for the purpose of enforcing the liability of the endorser, so the aspect of endorsement with which we are primarily concerned was not immediately involved. Nevertheless, the two cases last cited recognize and utilize, as the test of whether the undertaking constitutes a general endorsement, the intention of the transferor to assume the obligations of a general endorser. It would seem that this test could equally well be applied to an undertaking which operated to extend the liability of the transferor beyond that of the ordinary endorser in blank. Words of guaranty being words of enlargement rather than words of limitation, it may fairly be inferred that the transferor's intent was to assume the burdens of endorsement and, in addition, the unconditional liability of one who guarantees payment. This is the view of the majority and of the more recent cases. To recapitulate, the signature of the payee is a blank

endorsement which, by implication of law, passes title to the transferee and is also a promise to pay the instrument on default of the maker on condition that the proper steps are taken to charge him. The signed guaranty is the same contract with one-half of the obligation (the promise to pay) expressed and made unconditional, and nothing therein restricts or negatives the implication of the blank endorsement created by the signature. That is, that portion of the contract relating to the transfer of the instrument rests in parol, as always; therefore title passes as by a blank endorsement free of the equities of the maker against the original payee. In *Rawlins County State Bank* v. *Rummel,* 114 Kan. 597 [220 Pac. 255], where the endorsement was made in the form of a guaranty, the court quotes the Kansas enactment of the Uniform Negotiable Instruments Law and says:

" 'Section 6557 of the General Statutes of 1915 reads:

" ' "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the endorsement of the holder completed by delivery."

" 'The note in controversy was transferred to the plaintiff in such a manner as to constitute it the owner and holder of the note.

. . . . . . . . . . . . .

" 'There was nothing on the face of the note or in the endorsement to show that the plaintiff was not a holder in due course. So far as the note in controversy was concerned, the writing on the back of it transferred it to the plaintiff. If that writing contained matter unnecessary in an endorsement, the rights of the purchaser could not be affected thereby, unless the additional matter was such as to give him notice of a defect in the note as between the parties thereto. The guaranty of payment of the note and of others given in renewal of it did not give any notice of any defect in the note or in the title of the holder thereof.

" 'In *Kellogg* v. *Douglas County Bank,* 58 Kan. 43 [48 Pac. 587, 62 Am. St. Rep. 596], the following language was used:

" ' "An endorsement made on the back of promissory note in the following language: 'For value received, we hereby guarantee payment of within note at maturity, waiving demand, protest, and notice of protest,' signed by the payee of the note, is a commercial endorsement as well as a guarantee of payment; and the note, being negotiable in form, is sufficient to pass a valid title to the paper and protect an innocent purchaser thereof.'' '

"It has also been said: 'There is a wide difference between writing on a separate piece of paper and a payee's writing something over his name on the back of a promissory note. If he should simply write his name on a separate sheet of blank paper, it would bind him to nothing; but if he writes his name on the back of a promissory note payable to his order, he becomes an endorser. So, if he should write an assignment, or a guaranty, or some other agreement, on a separate sheet of paper, and sign it, that would be a distinct contract; but when he writes his name upon the back of a note payable to his order, the addition of words which either limit or enlarge the usual liability on his part which would arise from a blank endorsement does not destroy the fact that the entry is an endorsement upon a negotiable paper, or prevent its efficacy as a method of passing the legal title upon negotiation at least unless there is something in the endorsement to show an intention to destroy the negotiable character of the paper.' (*Hendrix* v. *Bauhard Bros.*, 138 Ga. 473 [75 S. E. 588, Ann. Cas. 1913D, 688, 43 L. R. A. (N. S.) 1028].) Other cases which support this view are: *First National Bank of Dalton, Ohio,* v. *Cummings,* 69 Okl. 216 [171 Pac. 862, L. R. A. 1918D, 1099]; *Jones City Bank* v. *Kurt,* 192 Iowa, 965 [182 N. W. 409]; *National Bank of the Republic* v. *Price,* 65 Utah, 57 [234 Pac. 231]; *Cady* v. *Bay City Land Co.,* 102 Or. 5 [201 Pac. 179, 21 A. L. R. 1367]; *First National Bank of Durand* v. *Shaw,* 157 Mich. 192 [121 N. W. 809, 133 Am. St. Rep. 342]; *Hoosier Mutual Ins. Co.* v. *Citizens' Trust & Savings Bank,* 89 Ind. App. 5 [165 N. E. 446]; *Hutson* v. *Rankin,* 36 Idaho, 169 [213 Pac. 345, 33 A. L. R. 91]; *Richmond Guano Co.* v. *Walston,* 191 N. C. 797 [133 S. E. 196, 46 A. L. R. 1512].

'The minority rule, as exemplified by the case of *Central Trust Co.* v. *First National Bank,* 101 U. S. 68 [25 L. Ed.

876], is that a guaranty placed on a bill or note does not constitute a commercial negotiation thereof, that the guaranty is a separate contract and that there is either no transfer or it operates as an assignment, the transferee taking subject to the equities of the maker, and this upon the theory that a blank endorsement admits of the implications of its terms only because of the fact that it is in blank and that where, as here, the contract is express, no other terms may be implied. For collections of cases and discussion of the opposing views see Notes 34 Yale L. J. 144; 72 U. of Pa. L. Rev. (Am. Law Reg.) 296; 21 A. L. R. 1375; 33 A. L. R. 97; 46 A. L. R. 1516.

"The majority decisions are the better reasoned and are in accordance with the policy of free circulation of commercial paper as a substitute for money and with the spirit and purpose of the Negotiable Instruments Law. In *Mangold & Glandt Bank* v. *Utterback*, 54 Okl. 655 [160 Pac. 713, L. R. A. 1917B, 364], after quoting section 4113 of the Oklahoma Revised Laws of 1910, which is identical with section 3144 of our Civil Code and with section 63 of the Negotiable Instruments Law, all of which provide: 'A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity', the Oklahoma court said: 'It will be observed from section 4113 that the tendency of the law, when the status of a party who places his name upon the back of a negotiable instrument is under consideration, is to resolve all doubtful cases towards holding the same to be a commercial endorsement in due course. This rule is founded upon commercial necessity. The unshackled circulation of negotiable notes is a matter of great importance. The different forms of commercial instruments take the place of money. To require each assignee, before accepting them, to inquire into and investigate every circumstance bearing upon the original execution and to take cognizance of all the equities between the original parties, would utterly destroy their commercial value and seriously impede business transactions.' In *Richmond Guano Co.* v. *Walston, supra,* similar language is used: 'The decisions years ago on this important question were chaotic. In more recent years, and especially since the passage among the

states over the nation of the Negotiable Instruments Laws to make the laws more uniform, the decisions are more in accord, and the great wealth hold that the endorsement, as in the present case, "Demand, notice, and protest waived; payment guaranteed by the undersigned," is an endorsement with an enlarged liability. The language makes the holder one in due course, and the instrument is taken free from equities and defenses which the maker has against the payee. The great importance in commerce and trade has forced uniform legislation in regard to negotiable instruments, and the courts have now, with few exceptions, held that the holder, under the facts in the present, is one in due course with enlarged liability.' It is further to be borne in mind that the purpose of making the endorsement in this form must have been to make the instrument more attractive to the prospective purchaser. As said in *Cady* v. *Bay City Land Co., supra:* 'It is not an instance where a stranger to an instrument guarantees its payment, which would be a collateral undertaking. It is a case of a payee, an actual party to the note, assuming a position in negotiating the same whereby he waives all further action on the part of the holder in fixing the liability of him who includes a guaranty in his endorsement.' For these reasons we agree with the majority, and we are of the opinion that the finding of the trial court that the note had been endorsed in blank was correct and in accordance with the law.

 ■ "The defendant objected to the introduction of the note in evidence on the ground that no transfer had been shown. In accordance with the views expressed above, the endorsement having been admitted, the notes were properly received in evidence. Section 3140 of the Civil Code provides that 'every holder is deemed *prima facie* to be a holder in due course'. 'Where the genuineness of the endorsement is not legally challenged, or is established by proof, then the rule applies, and for the reason that, like an instrument made payable to bearer on its face, one payable to order may be negotiated by mere delivery when endorsed in blank by the payee. Hence the presumption of ownership from the mere fact of the possession of such an instrument.

 " 'This is illustrated by some of the cases cited and quoted from in counsels' brief. Among them is the case of *Dawson Town & Gas Co.* v. *Woodhull,* 67 Fed. 451 [14

C. C. A. 464, 32 U. S. App. 134], wherein Circuit Judge Thayer, in the opinion of the court, said: ''The legal presumption of ownership which exists in favor of one who is ostensibly in possession of negotiable notes endorsed in blank by the payee, as these notes were, and who brings a suit thereon, is not overcome by a mere denial of the fact of ownership contained in the answer. When these notes were offered, they were in the hands of the plaintiff's attorneys. The legal presumption was that they had received them from the hands of their client . . . and that they were the client's property. There was no occasion, therefore, for offering testimony to confirm the presumption before the notes were admitted in evidence.'' ' (*Capitol Hill State Bank* v. *Rawlins Nat. Bank,* 24 Wyo. 423 [160 Pac. 1171, 11 A. L. R. 937, 944].)

 ''It is insisted by the appellant that there was no delivery of the note other than for the purpose of inspection and investigation, that there was no meeting of the minds of Craig and the plaintiff corporation and that the agent, Sommerfield, was never directed or authorized to deliver the note as collateral security. The evidence with reference to this transaction is sharply conflicting. Ramish, the president of the plaintiff corporation, testified that Craig's note to plaintiff was due in February of 1932; that a thirty-day extension was given and that in April the plaintiff threatened suit; that Sommerfield made several calls on Ramish for the purpose of securing an extension which was refused because no security was offered other than an interest in an apartment house which he refused to accept; that, after that, Sommerfield offered the Woodruff note as security; that he, Ramish, said he would accept it as collateral security 'providing the note was any good'; that he received the note on May 7, 1932; that Sommerfield promised to get a report on the maker which he gave to Ramish on May 9th; that Ramish then himself investigated Woodruff's affairs and, on May 11th, told Sommerfield he would accept the note as collateral security, giving Craig an extension on his note until July 19th, when the Woodruff note was payable, but that no written extension had been given; that it was never intended that he should credit the Woodruff note on the Craig note, but only that he was to credit thereon whatever he collected on the Woodruff note at maturity.

He also testified that after May 7, 1932, Sommerfield never asked for the return of the Woodruff note.

"The record contains a receipt dated May 7, 1932, and signed by Ramish, in which he acknowledges the receipt of the Woodruff note from Sommerfield and that it was. 'to be held for a reasonable time for the purpose of investigation as to the responsibility of the maker'. This is not inconsistent with Ramish's story of the transaction. There is also in evidence a carbon copy of a letter from Ramish's attorney to Craig dated July 16, 1932, enclosing a carbon copy of a letter to Woodruff 'concerning note which Adolph Ramish, Inc., hold as collateral for payment of your note dated November 3, 1931'. Ramish's attorney testified that he was present on the occasion when Sommerfield offered the note as collateral security and that the understanding was that the Craig note should be allowed to run until the maturity of the Woodruff note which was given to secure it; that the whole purpose of the transaction was to give security to gain time. One Weinblatt, who was involved in the transaction in connection with which Craig had given his note to Ramish, testified that Craig had told him prior to May 7th that he was having Sommerfield negotiate with Ramish with the purpose of giving the Woodruff note as collateral security for his own note.

"Murrey Sommerfield testified that he carried on the negotiations with Ramish with regard to Craig's note; that on May 7th he delivered the Woodruff note to Ramish for purposes of inspection and received the receipt; that he told Ramish the only way he could use the note was to return the Craig note; that when he asked for its return, after having delivered the financial report on Woodruff, Ramish said 'not yet', that he wanted to try to collect the note; that nothing was said about holding it for security; that three or four weeks later Ramish still refused to return the Craig note, saying that he wasn't 'ready to give it up' or to say what he was going to do with the notes; that he knew of no extension agreement. Craig testified that he told Sommerfield he believed it might be possible that the Woodruff note might be used in some way to satisfy Mr. Ramish as to his, Craig's, indebtedness and that he wished Sommerfield to take the matter up with him 'along those lines'; that he had no communication with Ramish thereafter; that Sommerfield re-

ported that Ramish was not inclined to take the note, but would negotiate further, that he wanted the note to inspect it and if it were satisfactory that he might use it to extinguish the obligation Craig owed him, though not Weinblatt's. He also testified that Sommerfield later reported that he had left the note; that he saw the receipt about the date it bears; that later Sommerfield told him Ramish was satisfied to take the note, but would not return the Craig note until he had collected on the other one. Further on in his testimony he said that he was never notified that Ramish would actually accept the note, although he had found it to be good and satisfactory paper. He also said that in his instructions to Sommerfield the manner in which the note was to be used was left quite indefinite 'because it would be a matter of conversation and discussion between Mr. Sommerfield and Mr. Ramish'; that his understanding was that Ramish was considering holding the note 'until it became due and collect from Mr. Woodruff', that 'it would be accepted, if at all, in the cancelation of my obligation, but I was never informed by Mr. Sommerfield that Mr. Ramish had said definitely that he would do that'; that no definite extension was ever given, the note was just allowed to run; that he could not remember whether he had ever previously requested Weinblatt to negotiate with Ramish for an extension.

"On this state of the evidence, and especially since the testimony of both the principal and his agent was extremely vague and evasive, the trial court was amply justified in concluding that the plaintiff took the note in controversy as collateral security, and hence for value. In our view of the case it is immaterial that no formal extension agreement was ever entered into. 'It is the law that an antecedent debt constitutes a valuable consideration for a transfer as security, and the holder of the security is a purchaser for value as to third persons. (*Smitton* v. *McCullough,* 182 Cal. 530, 537 [189 Pac. 686]; *Fowles* v. *National Bank of California,* 167 Cal. 653, 664 [140 Pac. 271]; *Chapman* v. *Hughes,* 134 Cal. 641, 659 [58 Pac. 298, 60 Pac. 974, 66 Pac. 982]; 17 Cal. Jur. 955.)' (*Ekmann* v. *Plumas County Bank,* 215 Cal. 671 [12 Pac. (2d) 433].)

"The appellant offered to show that, although the face value of the Craig note was $13,500, the plaintiff had

in fact only advanced the sum of $6,820 and that this amount was the actual indebtedness which the Woodruff note was given to secure, and such proof was refused by the trial court. This was error. We have already pointed out that, simultaneously with the execution and delivery of the Woodruff note, Craig executed and delivered to Woodruff his promissory note in the same amount, $10,000. The pledgee of notes can recover the full amount thereof from the maker, holding any surplus over the debt for the benefit of the payee-pledgor, when there are no equities between the maker and the pledgor, but, if there is any defense available to the maker against the endorser, the pledgee, although he is a holder in due course is only a holder in due course to the amount of his debt, and can only recover on the note the amount for which it was pledged. 'Where the holder has a lien on the instrument, arising from the contract or by implication of law, he is deemed a holder for value to the extent of his lien.' (Cal. Civ. Code, sec. 3108 [N. I. L., sec. 27]; Brannan's Negotiable Instruments Law [5th ed.] 362; *Bell* v. *Bean*, 75 Cal. 86 [16 Pac. 521]; *Kelly* v. *Universal Oil Co.*, 65 Cal. App. 493, 498 [224 Pac. 261]; Note 69 A. L. R. 898.) It is obvious that in order to determine the actual amount of the indebtedness secured such evidence was both proper and necessary. To hold otherwise would be to allow a pledgee to recover from the maker of the collateral note, who has a defense against the pledgor, a greater amount than he could recover in a suit against the pledgor himself."

It follows from the above conclusion that, because of the failure of the trial court to permit appellant to prove the consideration paid for the $13,500 Craig note, the judgment would necessarily have had to be reversed and the cause remanded to the trial court in order that such evidence might be taken, unless additional evidence be taken by this court as provided in section 956a of the Code of Civil Procedure and Rule XXXVIII of the Rules of the Supreme Court. (204 Cal. lxvi.) As above noted, upon the presentation of a petition for a rehearing, it was deemed advisable to grant to respondent the right to present evidence upon this issue to this court, and at the same time, the privilege was extended to appellant to present further evidence with reference to the issue of whether or not plaintiff was a holder in due course

of the $10,000 Woodruff note, which it is seeking to collect in this action. It seemed expedient to this court, instead of having the evidence presented to it, to have it taken before a referee and transmitted to this court. Pursuant to this plan, an order was made by this court appointing as referee a judge of the Superior Court of Los Angeles County, where the controversy originated, to take said additional evidence. Said evidence was taken, and is now before us upon a properly authenticated transcript. From a reading of the transcript, we are satisfied that the original finding of the trial court with reference to the issue of whether or not the plaintiff was the holder in due course of the $10,000 Woodruff note, executed by Woodruff to Gavin Graig, as payee and by the latter transferred to plaintiff as collateral security for Craig's note for $13,500 is correct. We adopt it as the finding of this court. Said finding is as follows: ''That plaintiff is now and at all times since the 11th day of May, 1932, has been, the holder of the note herein sued upon for value and in the usual course of business, as collateral security for the payment of said $13,500 note of the said Gavin W. Craig.'' In opposition to respondent's claim that it was the owner of said note on the eleventh day of May, 1932, appellant offered evidence to the effect that on June 23, 1932, which was over a month after the date on which respondent claimed to have acquired said note, one Weinblatt offered to one Ernest Smith a note executed by Woodruff to Gavin W. Craig, as payee, in the sum of $10,000. Appellant failed to show with any degree of conclusiveness that the note claimed to have been offered to Smith by Weinblatt was the identical note sued on by respondent as the basis of this suit. In fact, from the evidence of Weinblatt, the inference is deducible that the $10,000 Woodruff note which Weinblatt offered to Smith was only one of a series of similar notes exchanged between Craig and Woodruff. On the other hand, in corroboration of the fact that it was a holder in due course of this identical note, respondent offered the affidavit of the vice-president of the Bank of Italy and a photostatic copy of the receipt given for the note by the collection department of said bank which demonstrated that said note had been turned over by respondent and was in the possession of the collection department of said bank from May 11, 1932, to June

13, 1932. Mr. Ramish testified that he withdrew said note on the latter date and retained the same in his possession until he turned it over to his attorney to commence suit thereon for its collection.

We are likewise satisfied, with reference to the issue of whether or not the Craig note for $13,500 executed and delivered by Craig, as payor, to respondent was supported by consideration, that the evidence does show consideration, and this being so, respondent is entitled to recover from appellant Woodruff in this suit upon Woodruff's $10,000 note transferred by Craig to respondent as collateral security for his $13,500 note, the entire amount of said $10,000 note. Respondent offered in evidence a written agreement, dated November 3, 1931, the date of the Craig $13,500 note, signed by respondent, by Craig, and by H. H. Harris, attorney for respondent, to prove that there was further consideration for the $13,500 Craig note, in addition to the sum of $6,820 paid by check to Craig by respondent. In said agreement is set forth the fact that respondent had paid to Craig the sum of $6,820, and that as a further consideration for the $13,500 promissory note executed by Craig, respondent agreed to assign to Weinblatt, all of his right, title and interest in and to a certain judgment in favor of respondent and against Weinblatt and one Lindsey, which with attorneys' fees amounted to $6,680. By said agreement, said assignment was to be delivered to said Weinblatt upon the payment in full of said $13,500 note, and said judgment was to be held as security for the payment of said note. The record does not indicate the reason why Craig was willing to give his note for $6,680 in excess of the money actually paid to him by respondent in order that a judgment against Weinblatt should be assigned to Weinblatt, but the fact remains that he was willing to do so, and did give his note for the sum of $13,500. The evidence shows that in pursuance of said agreement respondent executed said assignment and turned said assignment over to H. H. Harris, its attorney, to be held by him in escrow until the due date of the Craig note, due ninety days from the date of said agreement. ■ The evidence also shows that subsequent to the securing of the judgment against Weinblatt and Lindsey by respondent, many attempts had been made to execute on said judgment, but that such efforts were uniformly un-

successful. It is apparent that since the assignment was to be delivered to Weinblatt only upon the payment of the Craig note, respondent did not permanently relinquish his judgment against Weinblatt nor accept Craig's note as satisfaction of said judgment. The question, therefore, is presented whether the agreement which had the effect of placing said assignment in escrow and of postponing any attempt to execute thereon for a period of ninety days was consideration for the balance of Craig's note in excess of the $6,820 paid in cash to Craig by respondent. ▮ It has been repeatedly held that the extension of time in which to pay money due confers upon the debtor an advantage or benefit which in itself constitutes a sufficient consideration for the execution of an instrument by him, and that where the instrument is executed by a third person in consideration of an extension given to the debtor, the detriment to the creditor is a sufficient consideration to support the promise of the third person. (19 Cal. Jur., pp. 841, 842, sec. 37; *Westphal* v. *Nevills,* 92 Cal. 545 [28 Pac. 678]; *Guy* v. *Bibend,* 41 Cal. 322.) "Any suspension or forbearance of a legal right constitutes a sufficient consideration. Thus an agreement to forbear to sue upon an obligation presently due is a sufficient consideration for the giving of a ńote. Even though the forbearance is for one day only, there is a sufficient consideration as the law does not weigh the *quantum.*" (19 Cal. Jur., p. 842, sec. 37.) Nor do we think the fáct that respondent had theretofore been unable to execute upon said judgment changes the legal rule. It does not necessarily follow that because theretofore plaintiff had been unable to secure satisfaction of his judgment, that on the date of the agreement he was not in a position to do so, or that at some time within the ninety days, he might not be in a more advantageous position. The mere right of the respondent to attempt to execute on said judgment, uncertain and contingent though it was, was a right which he need not voluntarily forego. When he gave up this right, he gave up something which might be of value to him, and which therefore was consideration for a promise made in exchange for the relinquishment of said right.

This court therefore finds that: "Said promissory note made and executed by said Gavin W. Craig, payable to the

order of the plaintiff, in the principal sum of Thirteen Thousand Five Hundred and no/100 dollars ($13,500) is supported by a sufficient consideration.''

The conclusions of law made and entered by the trial court are hereby adopted by this court. They are as follows: ''That plaintiff is entitled to judgment against defendant in the sum of Ten Thousand and no/100 dollars ($10,000) principal; interest thereon at seven per cent (7%) per annum from May 19th, 1932; Five hundred and no/100 dollars ($500) attorneys' fees, and its costs incurred herein.''

▆ The fact should perhaps be mentioned that subsequent to the taking of additional evidence, appellant sought and secured the permission of this court to file a supplemental brief. In this brief, for the first time, the contention was made that the entire proceedings of the original trial and the judgment rendered therein were invalid by reason of the fact that the clerk's minutes showed that the demurrer to the original complaint had been sustained; that thereafter no amended complaint was filed, but instead plaintiff served upon defendant a notice that the demurrer was overruled with leave to answer and as a result of this false notice, defendant answered and the case proceeded to trial. It is sufficient to say that respondent has filed in this court a certified copy of an order of the judge who heard the argument on the demurrer, correcting the clerk's minutes which were in error so as to speak the truth and show that the court's order with reference to the demurrer in fact overruled it. This, we think, is a complete answer to appellant's belated contention.

It follows from this discussion that appellant has failed by its proffered evidence to prove that respondent was not a holder in due course of the note herein sued upon, and that respondent has established that the Craig note for $13,500 is supported by a consideration of $6,820 in cash paid to Craig by check, and the further consideration of an assignment of a judgment to a third person on which there was due at the time of the delivery of the Craig note, $6,680, and the postponement for ninety days of any attempt to execute on said judgment. It follows that the judgment of the trial court against appellant, which is less than the amount due on the Craig note, should be affirmed.

The motion heretofore made by respondent to dismiss the appeal is denied. The judgment is affirmed.

Preston, J., Langdon, J., Waste, C. J., Shenk, J., and Seawell, J., concurred.