## MANGOLD & GLANDT BANK v. UTTERBACK.

No. 6028. Opinion Filed January 11, 1916.

(160 Pac. 713.)

1. **BILLS AND NOTES—Negotiable Note—Innocent Purchaser——"Indorsee."** When the payee of a negotiable promissory note transfers it by indorsing thereon "Payment guaranteed. Protest waived," the purchaser is an "indorsee," within the rule protecting an innocent purchaser of such paper for value and before maturity against defenses good between the original parties.

2. **SAME—Commercial Indorsement in Due Course.** The tendency of the law, when the status of a party who places his name upon the back of a negotiable instrument is under consideration, is to resolve all doubtful cases toward holding the same to be a commercial indorsement in due course.

3. **SAME—Simple Indorsement—Effect.** A simple indorsement by the payee of his name upon a note serves the double purpose of transferring the title to the holder and of charging the payee with the obligation to pay it in event the maker, upon presentation, declines to honor it.

4.    **PLEADING—Action on Note—Judgment on Pleadings.** Where plaintiff declares upon an indorsed negotiable promissory note, and a copy of the note is attached to the petition showing an undated indorsement, and defendant does not deny such indorsement under oath or fails to plead facts showing that plaintiff took the note with knowledge of such infirmities as would operate to defeat it between the original parties, plaintiff is entitled to judgment upon the pleadings.

(Syllabus by Mathews, C.)

*Error from County Court, Caddo County;*
*C. Ross Hume, Judge.*

Action by the Mangold & Glandt Bank against W. T. Utterback. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*Randall U. Livesay,* for plaintiff in error.

*A. J. Morris,* for defendant in error.

Opinion by MATHEWS, C. In October, 1910, the defendant purchased from the Denver-Laramie Realty Company certain shares of stock in said company and executed his note to said company in payment for same. On August 14, 1911, the note was renewed, and afterwards transferred to the plaintiff in error. A copy of the note with indorsements is as follows:

"$1,000.00.        DENVER, COLORADO, August 14, 1911.

"December 14, 1911, after date, I promise to pay to the order of Denver-Laramie Realty Company one thousand & no/100 Dollars, for value received. Payable at First State Bank of Binger, Okla., with interest at seven per cent., from maturity.

"[Signed]                W. T. UTTERBACK."

Indorsed on back:

"Payment Guaranteed.    Protest waived.

"THE DENVER-LARAMIE REALTY CO.,
    "By A. J. SPENGEL, *Treasurer.*
"NORTHWESTERN LAND & IRON CO.,
    "By A. J. SPENGEL, *Treasurer.*"

On October 10, 1912, suit was instituted on said note in the county court of Caddo county. The defendant answered by general denial, admitted the execution of the note, and alleged that the note was given for certain shares of stock in the Denver-Laramie Realty Company, but claimed that he was induced to sign the same through certain false and fraudulent representations upon the part of said company. Trial was had to a jury, verdict was returned for defendant, and plaintiff prosecutes this appeal.

Its first specification of error is stated as follows:

"The court erred in overruling motion of plaintiff for judgment, for the reason that, as plaintiff had alleged it was a purchaser in due course of business, for value, before maturity, and without notice, the defenses set up were not available to defendant."

The defendant advances the following argument against the foregoing contention of plaintiff:

"While the note is negotiable in form, the indorsement is in no sense a commercial indorsement. It is a guaranty of payment pure and simple; that is, the words, 'Payment guaranteed. Protest waived,' followed by the signatures of the two companies, mean that the companies guarantee the payment of the note and waive the protest thereof. The indorsement, amounting to a guaranty of payment, gives the plaintiff in error no standing as a *bona fide* holder of the note, but it holds the same subject to all defenses which would be available as against the original payee."

If plaintiff's contention that the said indorsement upon the note was a commercial indorsement is correct, there being no allegations in the answer that plaintiff had notice of the alleged infirmity of the note, then plaintiff was entitled to judgment upon the pleadings.

In arriving at a decision on this point we are confronted with a chaotic conflict of opinions thereon, and, as far as our investigation has led us, we find that the courts of but few, if any, of the states have been consistent in declaring on this proposition, and our own court is in conflict thereon. The case of *McNary et al. v. Farmers' Nat. Bank*, 33 Okla. 1, 124 Pac. 286, 41 L. R. A. (N. S.) 1009, Ann. Cas. 1914B, 248, sustains plaintiff, and the case of *Ireland et al. v. Floyd*, 42 Okla. 609, 142 Pac. 401, L. R. A. 1915C, 661, sustains defendant. An instructive note to the case of *Hendrix v. Bauhard*, Ann. Cas. 1914D, 688, after giving a list of the states, including both Oklahoma and Kansas, which hold that a signed guaranty on the back of a note makes the guarantor liable as an indorser, states that the great weight of authority supports that view. In the case last cited there was written on the back of the note, "For value received we hereby warrant the makers of this note financially good on execution," which was followed by the signatures of the payees, and it was there held, if the note was negotiated before maturity to a *bona fide* purchaser for value, he would be protected from any defense the maker might have against the payees.

The leading case holding to this view is a North Dakota case, *Dunham v. Peterson*, 5 N. D. 414, 67 N. W. 293, 36 L. R. A. 232, 57 Am. St. Rep. 556, and there the subject is also treated with an extended note which declares that the numerical weight of authorities support the decision in *Dunham v. Peterson*. The indorsement on the note in the Dunham Case was as follows: "For value received, I hereby guarantee the within note, waiving notice of protest and demand." Beneath this guaranty the payee signed his name. The court held therein

that, when the payee of a negotiable promissory note transfers it by indorsing thereon a guaranty of payment, the purchaser is an indorsee within the rule protecting an innocent purchaser of such paper for value before maturity against defenses good between the original parties.

The case of *Markey v. Corey,* 108 Mich. 184, 66 N. W. 493, 36 L. R. A. 117, 62 Am. St. Rep. 698, presents an instance where an assignment was written on the back of the note followed by the signature of the payee of the note, and the court held the payee liable as an indorser.

The case of *Pattillo v. Alexander,* 96 Ga. 60, 22 S. E. 646, 29 L. R. A. 616, is an exhaustive and well-considered one on the point under discussion, and, after reviewing the authorities thereon at great length, concludes that a guaranty written on the back of a negotiable promissory note followed by the signature of the payee ordinarily amounts to a commercial indorsement. *Robinson v. Lair,* 31 Iowa, 9; *Kellogg v. Douglas County Bank,* 58 Kan. 43, 48 Pac. 587, 62 Am. St. Rep. 596; 2 Daniel on Negotiable Instruments (6th Ed), sec. 1781; *Judson v. Gookwin,* 37 Ill. 286; *Green v. Burrows,* 47 Mich. 70, 10 N. W. 111; *Russell & Co. v. Klink,* 53 Mich. 161, 18 N. W. 627; *National Bank v. Hayden,* 14 Neb. 480, 16 N. W. 754; *Mullen v. Jones,* 102 Minn. 72, 112 N. W. 1048; *German-American Savings Bank v. Hanna,* 124 Iowa, 374, 100 N. W. 57; *Dunham v. Peterson,* 5 N. D. 414, 67 N. W. 293, 36 L. R. A. 232, 57 Am. St. Rep. 556; *Elgin City Banking Co. v. Zelch,* 57 Minn. 487, 59 N. W. 544; *Childs, Junior, v. Davidson,* 38 Ill. 437; *Donnerberg v. Oppenheimer,* 15 Wash. 290, 46 Pac. 254; *Partridge v. Davis,* 20 Vt. 499; 3 R. C. L. vol. 3, sec. 241, p. 1035; *Heard v. Dubuque County Bank,* 8 Neb. 10, 30 Am. Rep. 811; *Helmer v. Commercial Bank,* 28 Neb. 474, 44 N. W. 482.

We are not unmindful of the fact that the case of *Ireland v. Floyd, supra,* is supported by a respectable line of authorities headed by the *Central Trust Co. v. First National Bank of Wyandotte,* 101 U. S. 68, 25 L. Ed. 876. Other authorities to the same effect are found in Ann. Cas. 1913D, 695; 36 L. R. A. p. 232, and 67 N. W. p. 295. But we think the better reasoning and greater weight of authority is with the case of *McNary et al. v. Farmers' Nat. Bank, supra.*

But, even if the case of *Ireland v. Floyd, supra,* were not opposed by the case of *McNary v. Farmers' Nat. Bank, supra,* and by the weight of authority from other states, we are inclined to the view that it is in conflict with the Negotiable Instruments Law of this state, adopted in 1909.

Section 4067, Rev. Laws 1910, so far as applicable, is as follows:

"Where the language of the instrument is ambiguous, or there are omissions therein, the following rules of construction apply: * * *

"Sixth. Where a signature is so placed upon the instrument that it is not clear in what capacity the person making the same intended to sign, he is to be deemed an indorser."

Section 4088: .

"Qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse' or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument."

Section 4107:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

Section 4109:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Section 4113:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

It will be observed from section 4113 that the tendency of the law, when the status of a party who places his name upon the back of a negotiable instrument is under consideration, is to resolve all doubtful cases towards holding the same to be a commercial indorsement in due course. This rule is founded upon commercial necessity. The unshackled circulation of negotiable notes is a matter of great importance. The different forms of commercial instruments take the place of money. To require each assignee, before accepting them, to inquire into and investigate every circumstance bearing upon the original execution and to take cognizance of all the equities between the original parties, would utterly destroy

their commercial value and seriously impede business transactions.

A simple indorsement by the payee of his name upon a note serves the double purpose of transferring the title to the holder and of charging the payee with the obligation to pay it in the event the maker, upon presentation, declines to honor it. But before the liability can be fixed against the indorser there must be: First, a demand made upon the maker of the note for payment; and, second, in case the same is not paid, notice must be given the indorser. The rule seems to be that a general guaranty is in law a general indorsement of the instrument, with a waiver of the condition precedent of a notice of nonpayment by the drawers. 3 R. C. L. sec. 371.

There is no contention but that in the case at bar the payee is at least a guarantor. If it be a guarantor only, then it is not entitled to the legal rights of an indorser to be served with notice of nonpayment. Yet we find written upon the back of the instrument in controversy the very significant words "Protest waived." . Why waive a right that the party did not have? It must be presumed that the parties did not intend to do a useless and unnecessary act when these words were written upon the back of the instrument, and the reasonable construction is that by the entire indorsement the payee became an indorser with the enlarged liability of being legally held to payment without notice of the dishonor of the note. Further, no one can fairly say that the intention of the payee not to be bound is clearly indicated from the words written upon the back of the instrument in controversy; in fact, the indication points the other way.

It will be admitted that, where the payee in a note makes a written assignment of the same on the back of the note, followed by his signature. he can with much better logic argue that such an act should be construed as an assignment only, and not a commercial indorsement, than can one who makes a guaranty in a similar way, yet in the recent case of *Farnsworth v. Burdick* (Kan.) 147 Pac. 863, under the same Negotiable Instruments Law as our own, the Kansas court held:

"Under the Negotiable Instruments Law (sections 5247-5446, Gen. St. 1909), a writing in these words, 'I hereby assign this note over to E. H. Farnsworth this the Nov. 1, 1910,' signed by the payee, on the back of a negotiable promissory note, complete and regular on its face, accompanied by delivery to the person named in the writing, is an indorsement of the note; and one who takes the note in good faith, for value, before it is due, without notice that it has been previously dishonored, and who, at the time he takes it, has no notice of any infirmity in the note or defect in the title of the person negotiating it, becomes the holder thereof in due course, and holds it free from any defect of title of the payee, and free from defenses available to the maker against the payee, and may enforce payment of the note for the full amount thereof against the maker."

Therefore, holding, as we do, that the payee was an indorser of the note in controversy, it appears that defendant's answer was defective in two important particulars.

Section 4095, Rev. Laws 1910, reads as follows:

"Except where an indorsement bears date after the maturity of the instrument, every negotiation is deemed *prima facie* to have been effected before the instrument was overdue."

Not only was there a presumption of law that the plaintiff became a *bona fide* holder before maturity, but it is so averred in its petition, and defendant has failed to plead that plaintiff took the note in bad faith or had notice of any infirmity of the note. *Showalter v. Webb,* 42 Okla. 297, 141 Pac. 439.

Section 4759, Rev. Laws 1910, provides:

"In all actions, allegations of the execution of written instruments and indorsements thereon, * * * shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

The plaintiff having alleged that the note was indorsed to it before maturity, for a valuable consideration, in due course of business, and a copy of said note having been attached to its petition showing the indorsement, and the indorsement having not been denied under oath, it follows that plaintiff was entitled to judgment on the pleadings. See the case of *First Nat. Bank of Laramie, Wyo., v. Vaughan* (Kan.) 151 Pac. 1118.

The judgment will be reversed and remanded, with instructions to the trial court that, if defendant does not elect to amend his answer, to enter judgment upon the pleadings in favor of plaintiff; if the answer is amended, then to proceed in conformity with this opinion.

By the Court: It is so ordered.