[S. F. No. 14015.   In Bank.—May 29, 1931.]

SALVADOR P. CRISTINA et al., Appellants, v. IRENE MATTENBERGER, as Executrix, etc., Respondent.

John W. Sullivan, Wm. H. Johnson and John R. Sullivan for Appellants.

E. M. Rosenthal for Respondent.

THE COURT.—In this case a hearing was granted in this court after decision by the District Court of Appeal, First Appellate District, Division One. Upon further consideration of the matter, we are satisfied with the correctness of the conclusion reached by the said court, and we hereby adopt the opinion prepared by Mr. Justice *pro tem.* Ward, as part of the opinion of this court. It reads as follows:

"This is an action originally brought by the appellants against Frank Mattenberger for a balance due and unpaid upon a promissory note of one J. Cole and the endorsement thereon signed by Mattenberger upon negotiating said note to appellants upon a trade for an equity in property owned by the appellants. Subsequent to the commencement of this action Frank Mattenberger died, and Irene Mattenberger, administratrix of his will, was duly substituted as defendant in his stead, a creditor's claim was presented against the estate, and a supplemental complaint filed.

"On October 7, 1924, Cole made and delivered to Mattenberger a promissory note for the sum of $6,500 payable in installments, and at the same time Cole executed and delivered to Mattenberger a chattel mortgage to secure the payment of the note. The note and the chattel mortgage on horses, mules and other personal property, was formally

assigned to plaintiff. The mortgage provided that if the mortgagor should fail to take proper care of the property covered thereby, the mortgagee might take immediate possession of the property and proceed to sell the same. On October 18, 1924, Cole informed plaintiffs that he was unable to feed or take care of the horses and mules; thereupon plaintiffs notified Mattenberger that Cole was unable to feed the stock, and that it was plaintiffs' intention to take possession of and sell all of the stock and other property unless said horses and mules were at once provided for and fed; thereafter Cole surrendered all of the property to plaintiffs, who proceeded to and did duly sell the same at public auction. It is alleged in the complaint that on April 7, 1925, plaintiffs demanded of said Cole said balance so due on that day, and that then and there he failed and refused to pay the same, and thereupon plaintiffs declared the whole of the principal and interest due according to the terms of the note, demanded payment, and that he failed and refused to pay. The complaint also alleges that Cole was insolvent on the date of demand and that plaintiffs immediately, and continuously thereafter, attempted to collect said balance from Cole; that they began suit against him, took default judgment and caused execution to be issued, but that it was impossible for plaintiffs to collect anything because of his insolvency. Appellants gave notice of dishonor of the note to Mattenberger. The balance of $5,355.04, principal, and $1,173, interest, was never paid, and the complaint prayed for judgment therefor, together with attorney's fees and accruing interest.

"Upon the trial, E. M. Rosenthal, attorney for Mattenberger, and Eli Wright, attorney for the Cristinas, were permitted to testify. Mr. Wright testified in part as follows: 'On or about the 7th day of October, 1924, I was attorney for Mr. Cristina. I prepared the note, mortgage and assignment in question here, at the request of Mr. Cristina. He wanted the chattel mortgage drawn up on about 40 horses and mules and some other odds and ends in the way of an automobile and dump wagons and one thing and another that belonged to Jim Cole. Cole was to make the mortgage to Mattenberger and Mattenberger was to assign it to Mr. Cristina. I went out with Cristina and took an inventory of the stuff to incorporate in

the chattel mortgage. No instruction was given to me by Mr. Cristina that Mr. Mattenberger was to guarantee the payment. My instructions were to draw up the mortgage from Jim Cole to Mattenberger and to draw an assignment from Mattenberger to Cristina. That was all the instruction. In accordance with those instructions I prepared the note, mortgage and assignment. I recall the time when it was finally consummated in your (Mr. Rosenthal's) office; I was present, you were present, Mr. Mattenberger and Mr. Cristina. . . . I don't remember any conversation taking place relative to the words "without recourse" at the actual signing of the paper. When you and I were together I said "Is this to be signed, 'without recourse'?" And you said "Yes." That was addresed to Mr. Rosenthal. The guarantee was that it was good, valid and subsisting note. That guarantee was put in, as far as I know, because Jim Cole was dealing in horses and it might be that Jim Cole might be declared a horse merchant and if Jim Cole was a horse merchant he could not mortgage his horses, and he was bankrupt, and it was my idea that if the mortgage was made by Jim Cole and Mattenberger signed it to Cristina, we would at least have a guarantee that it was a good mortgage and that he had a right to mortgage it, and as far as I know that was the only guarantee talked about; if there was any other guarantee between Cristina and Mattenberger, I don't know what it was. I drew this guarantee myself. Mr. Cristina didn't give me to understand that Mr. Mattenberger was to guarantee the payment of this note.' Mr. Rosenthal testified to the same effect, except that he remembered the conversation between Mattenberger and Cristina, before Cristina visited Wright, related as follows: 'Mr. Cristina then said to Mattenberger, "You are going to guarantee this, are you?" And Mr. Mattenberger said "Not on your life; I guarantee nothing; you take that property as it is and we will go ahead and trade; when we make a trade I want to get through with it." ' The present attorney for the plaintiffs objected that the note could not be explained by oral testimony, which objection was overruled. Thereupon there was a motion to strike out the testimony of both Wright and Rosenthal as being inadmissible.

"The endorsement in dispute is as follows: 'For value received I hereby sell, set over and assign the within note,

and the chattel mortgage securing the same, to Salvador P. Cristina and Tony R. Cristina, and hereby guarantee that this is a good, valid and subsisting promissory note; that it is secured by a good, valid and subsisting chattel mortgage; that all of the personal property described in said mortgage is the property of J. Cole, signer of this note, and that it is fully paid for and unincumbered, except as to said mortgage, which is a first mortgage securing this note. Dated Oct. 7th, 1924, Frank Mattenberger.'

▮ "Appellants contend that the court erred in admitting the testimony of witnesses Rosenthal and Wright, and in refusing to strike out said testimony, and in finding that it was understood at the time of execution that Mattenberger did not guarantee payment or collectibility, and that the transfer was without recourse. 'When a contract is reduced to writing the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title' (sec. 1639, Civ. Code). 'When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings. 2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deed and wills, as well as contracts between parties' (sec. 1856, Code Civ. Proc.). 'For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret' (sec. 1860, Code Civ. Proc.). In the case of a blank endorsement or an endorsement without limitation, qualification or restriction, oral testimony is inadmissible to show any agreement between the endorser and the endorsee of a

promissory note that the note was to pass without recourse. A qualified endorser, however, is limited as the terms of endorsement indicate. It may be an endorsement of the integrity of the maker that all prior endorsers had capacity to pay or an endorsement of the validity of the instrument, etc. (See *Quatman* v. *Superior Court,* 64 Cal. App., at 208, 209 [221 Pac. 666].) 'A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words "without recourse" or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument' .(sec. 3119, Civ. Code). It becomes necessary, therefore, to determine if the words 'this is a good, valid and subsisting promissory note' are words of similar import as the words 'without recourse'. In other states than California the courts have placed such construction as the words used indicated. (*Dunham* v. *Peterson,* 5 N. D. 414 [57 Am. St. Rep. 556, 36 L. R. A. 232, 67 N. W. 293]; *Hendrix* v. *Bauhard,* 138 Ga. 473 [Ann. Cas. 1913D, 688, 43 L. R. A. (N. S.) 1028, 75 S. E. 588]; *Mangold and Glandt Bank* v. *Utterback,* 54 Okl. 655 [L. R. A. 1917B, 364, 160 Pac. 713]; *Richmond Guano Co.* v. *Walston,* 191 N. C. 797 [46 A. L. R. 1512, 133 S. E. 196].) But no case has been called to our attention with the exact words used in connection with this endorsement or with such a similar wording that would warrant us in accepting as authority the ruling from another jurisdiction. If there appears 'extrinsic ambiguity' other evidence may be introduced including the circumstances under which it was made, the situation of the subject of the instrument and of the parties to it. In connection with the full assignment in this case the words are ambiguous. The intent of the endorser then and the endorsee becomes a vital question. Counsel for appellants seems to have some doubt upon the correct interpretation to place upon these words, as he notes on page 9 of the opening brief, 'A rule ought to be promulgated that would require one signing his name on the back of a note to use words that leave no doubt as to his intention in order to make him a qualified indorser.' We must conclude that the evidence introduced to show the intent of the endorser was admissible and that it was the only reasonable method of placing a proper construc-

tion upon the endorsement in dispute. The evidence clearly proves that Frank Mattenberger's endorsement on the back of the promissory note did not make him a general endorser, but that said endorsement was qualified, that is, that it was a mere assignment for the purpose of transferring the interest or title of Mattenberger to the Cristinas. Mattenberger was a qualified endorser without recourse of payment.

"Appellants also contend that Mattenberger was a conditional guarantor. To reach this conclusion it would be necessary to strike out the words 'valid and subsisting' and likewise the entire endorsement and assignment and consider only 'this is a good . . . promissory note'. The language used upon the assignment of the mortgage and upon the endorsement of the note is practically the same. We cannot separate the phrase 'good, valid and subsisting' and hold that it was a subsisting note or a valid note or a good note. 'Good, valid and subsisting' refers to the genuineness of the document after it is free from any equities, claims or defenses of the maker or a third party and does not warrant the solvency of the maker or its collectibility from the party endorsing it. In this case appellants knew when the trade was made that Cole, the maker, was insolvent, and that no financial liability was to attach to Mattenberger except as specifically mentioned and limited. ■ 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful' (sec. 1636, Civ. Code).

■ "In view of all the evidence in this case, the court did not err in finding that Cole's bankruptcy was 'a factor affecting the negotiation and consummation of the execution and delivery of the promissory note and mortgage of Frank · Mattenberger and his endorsement and assignment to appellants'. ■ If it is necessary further to discuss this case, we may say that appellants did not use reasonable diligence against Cole, and that no proper demand was made on the maker as required by law. Nineteen months elapsed between the entry of the default and the entry of judgment and the issuance of. execution. If Mattenberger could have been held as a guarantor then as a condition precedent to a right of action against the en-

dorser, appellants should have proceeded with 'reasonable diligence'. (See sec. 2800, Civ. Code.) Insolvency of the maker of a promissory note, even if known to an endorser, will not excuse the formality of presentment, demand and notice (*Roper* v. *Gould*, 22 Cal. App. 114 [133 Pac. 622]). In the present case the demand was not made as specified in the instrument (sec. 3154, Civ. Code). The trial court did not err in its decision, its rulings or its findings.''

▮ In granting a hearing in this case, this court was chiefly concerned with the possible bearing of section 3144 of the Civil Code upon the indorsement in question. The section reads as follows: ''A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an indorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity.''

It is contended by plaintiff that the effect of this section is to prevent any inquiry by the court into the meaning of an ambiguous indorsement, because by such an indorsement the party has failed to indicate ''clearly'' and ''by appropriate words'' his intention to be bound in some other capacity ·than a general indorser. A few decisions uphold this contention. (See *Copeland* v. *Burke*, 59 Okl. 219, [L. R. A. 1917A, 1165, 158 Pac. 1162] ; *Mangold etc. Bank* v. *Utterback*, 54 Okl. 655 [L. R. A. 1917B, 364, 160 Pac. 713].) But a study of the cases reveals that very few of them have relied upon this particular section of the law in solving the problem. Indeed, the most distinguished critic of the Negotiable Instruments Law believed that it offered no aid at all in determining the effect of a transfer in words of assignment and that ''an excellent opportunity to unify the law was neglected''. (Ames, The Negotiable Instruments Law, 14 Harv. L. Rev. 442, 445.) The cases, both before and after the adoption of the uniform act, are not in accord, though perhaps the majority favor the liability of a general indorser. (See Arant, The Written Aspect of Indorsement, 34 Yale L. J. 144, 152.) The case of *Hammond Lumber Co.* v. *Kearsley*, 36 Cal. App. 431 [172 Pac. 404], decided prior to our enactment of the uniform law, but under a statute substantially the same as the present section 3144, supports the conclusion reached by the District Court of ·Appeal in the instant case. In view

of the confusion in the holdings in other jurisdictions, and the absence of any controlling provision in our present statutes, we are not disposed to overrule that decision. We think, moreover, that the particular language used in the transfer involved in the instant case offers a much stronger indication of intention not to be bound as a general indorser, than may be found in most of the cases that have come to our attention.

The judgment is affirmed.