[No. A087659. First Dist., Div. Two. Nov. 16, 2000.]

TONY E. GAETANI, SR., Plaintiff and Appellant, v.
GOSS-GOLDEN WEST SHEET METAL PROFIT SHARING PLAN,
Defendant and Respondent:

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Michael B. Bassi and Donna L. Quan for Plaintiff and Appellant.

Bayer & August and Andrew A. August for Defendant and Respondent.

**OPINION**

**LAMBDEN, J.**—California statutory and case law preceding our state's 1963 enactment of the Uniform Commercial Code established that the indorser of a promissory note could avoid liability for any default by the maker by adding the words "without recourse" *or* words of equivalent effect—what we will call "the equivalency rule." Specifically, case law held that words assigning all of one's *right, title and interest* in the note were equivalent to indorsing it *without recourse*. (*Kern v. Henry* (1934) 138 Cal.App. 46, 50-51 [31 P.2d 454]; *Mathes v. Bangs* (1932) 128 Cal.App. 171, 172-173 [16 P.2d 749].)

In the case at hand, Tony E. Gaetani, Sr. (Gaetani) took a note indorsed to him in 1989 with those equivalent words by a trustee for Goss-Golden West Sheet Metal Profit Sharing Plan (Goss) as part of a real estate sale. He then brought this suit in part against Goss after the maker's default, and the trial court held, against Gaetani's arguments to the contrary, that the cited authority remained controlling and barred relief. We will affirm.

### BACKGROUND

The note, for $300,000 (the Bond note), was given by Arthur E. Bond to Goss in 1988 and was secured by a deed of trust on land in San Bernardino,

California. In late 1989, Gaetani, general partner of RAM Investors (RAM), a Nevada limited partnership, entered an agreement with Goss trustee Eugene Supanich to sell Goss commercial property owned by RAM in Reno, Nevada. The full price was $1.25 million and, in lieu of partial payment, Gaetani accepted three notes held by Goss—one for $35,000, one for $89,000 and the Bond note for $300,000. Each was indorsed by Supanich as Goss trustee and delivered to Gaetani.

Owing evidently to different title companies doing the drafting, the indorsements differed. The two lesser notes bore essentially this language on their reverse sides: "The undersigned [Supanich, trustee for Goss] hereby assigns all of their right, title and interest in and to the herein Note to RAM INVESTORS, a Nevada limited partnership. [¶] Pay to the order without recourse to the following: [¶] RAM INVESTORS, a Nevada limited partnership."

The Bond note indorsement, however, read: "For value received, the undersigned [Supanich, trustee for Goss] hereby assigns and transfers all right, title and interest in and to the within Note to TONY E. GAETANI, SR." The absence of the words "without recourse" forms the nub of this appeal.

Bond ultimately paid no principal and only partial interest. In November 1997, after default, presentment, demand and notice of dishonor, Gaetani brought this action in San Francisco Superior Court against Goss, Supanich, Supanich's wife, and Bond. The case took a tortured path, with transfer of the action to San Bernardino County and back again, and ultimately came before the Honorable Alex Saldamando for bench trial on a first amended complaint claiming breach of contract as against Bond, breach of contract and indorser liability as against Goss, a common count for money lent as against Goss and Bond, and foreclosure of deed of trust as against all defendants. The issues were narrowed by factual and legal stipulations, including a stipulated judgment for judicial foreclosure and sale of the San Bernardino property.

In the end, the only contested issue for Judge Saldamando was whether the indorsement language allowed Gaetani to recover directly against Goss under former section 3414, subdivision (1) of the California Uniform Commercial Code as that code read before repeal and revision in 1992. The judge resolved this legal question of legislative intent against Gaetani in a carefully crafted statement of decision that found no change in the half-century of precedent "holding language of assignment to be the equivalent of without recourse."

The court, as to Goss, ordered judgment in its favor and declared it entitled to fees and costs as the prevailing party, in amounts not determined. Gaetani appeals as to the judgment regarding Goss, but not as to the other defendants or the foreclosure and sale. A post-notice-of-appeal amendment inserted the fees and costs amounts, which Gaetani also purports to challenge by this appeal.

Goss has requested that we take judicial notice of (Evid. Code, § 452, subd. (h)) two San Bernardino County documents. One, a "Sheriff's Sale Under Foreclosure" dated March 8, 2000, shows Gaetani having a total secured indebtedness on the property of $401,806, including interest and costs. The other, a "Sheriff's Certificate of Sale on Writ of Sale" dated April 4, 2000, shows Gaetani's foreclosure on the property for a credit bid of $406,328.97. Gaetani does not dispute either document or directly oppose judicial notice, which we grant, but he disputes Goss's suggestion that he "will likely be made whole" by the foreclosure. He notes that the $80,376.01 in fees and costs from this case remain. We do not find the appeal moot.

## DISCUSSION

### I. *The Effect of the Indorsement*

■ The form of an indorsement, for our purposes, has two distinct but sometimes related aspects. First, it can affect the instrument's transfer and negotiability. Second, it can affect the liability incurred by the indorser. (Cf. *Adolph Ramish, Inc. v. Woodruff* (1934) 2 Cal.2d 190, 195 [40 P.2d 509, 96 A.L.R. 1146] [words of guaranty].) ■ This case concerns the indorser-liability aspect, specifically, whether the indorsement was unqualified and thus left Gaetani with recourse against Goss in the event of Bond's default, or was qualified and thus left him without recourse. As will be explained, Gaetani's arguments invite us to confuse the two aspects of indorsement, but Judge Saldamando kept them straight and correctly ruled that the language used here effected an indorsement equivalent to one "without recourse."

### A. *Antecedent Law*

Since Gaetani ultimately claims a 1963 statutory change in the equivalency rule, we begin with the legal history. Our state's earliest cases dealt with Field Code-derived provisions in the Civil Code as enacted in 1872. (See generally Kleps, *The Revision and Codification of California Statutes 1849-1953* (1954) 42 Cal. L.Rev. 766, 772-775, 792.) Former section 3118 of that code articulated the equivalency rule this way: "An indorser may qualify his indorsement with the words, 'without recourse,' or equivalent

words; and upon such indorsement, he is responsible only to the same extent as in the case of a transfer without indorsement." Former section 3119 added: "Except as otherwise prescribed by the last section, an indorsement, without recourse, has the same effect as any other indorsement." On negotiability, the provisions distinguished *general* from *special* indorsements (Civ. Code, former § 3111); special indorsements could specify the indorsee (*id.*, former §§ 3113-3114) and, "by express words for that purpose, but not otherwise, be so made as to render the instrument not negotiable" (*id.*, former § 3115).

The earliest case we find applying those indorser-liability provisions to language similar to that used in the Bond note concerned language assigning " 'all of our interest in this promissory note . . . .' " (*Hammond Lumber Co. v. Kearsley* (1918) 36 Cal.App. 431 [172 P. 404] (*Hammond Lumber*).) Deeming out-of-state authority persuasive, the Court of Appeal found a qualified indorsement "within the terms of section 3118 of the California Civil Code . . . . The propriety of such a construction as we place on the assignment executed by respondents is plain. They conveyed all of their interest in the note. To permit the appellant to hold them as indorsers would be to allow it to exercise a right which was not within nor a part of that interest." (*Id.* at pp. 432-433.) In other words, conveying all of one's interest in a note conveyed nothing more than one's right to seek redress from the maker. This rationale accorded with long-standing precedent from other jurisdictions. (See, e.g., *Hailey v. Falconer* (1858) 32 Ala. 536, 539-540 [" 'all my right and title . . . to be enjoyed in the same manner as may have been by me' "].)

In 1917, California supplanted those provisions with its first uniform act on the subject, the Negotiable Instruments Law (NIL), codified as former sections 3082 through 3266d of the Civil Code. (Stats. 1917, ch. 751, § 1, pp. 1531-1560.) Replacing former section 3118 was new Civil Code section 3119, which perpetuated the equivalency rule in similar words while specifying that qualifying language did not limit negotiability: "A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse', or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument." (Stats. 1917, ch. 751, § 1, pp. 1531, 1539.) A new former section 3147 provided in part that anyone indorsing an instrument without qualification "engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder . . . ." (Stats. 1917, ch. 751, § 1, pp. 1542-1543.)

Indorser-liability cases under the NIL trod the path blazed by *Hammond Lumber, supra,* 36 Cal.App. 431, and formed the authority the trial court here found controlling. In *Kern v. Henry, supra,* 138 Cal.App. at pages 48-51, a transfer and assignment of " 'all my right, title and interest' " was deemed qualified, even though the words " 'without recourse' " had been stricken upon objection by the transferee. "After the words 'without recourse' were stricken from the indorsement on this note, the indorsement . . . purported to transfer and assign only the right, title and interest of the respondents in the note and deed of trust securing the same and, under well-established rules, this remained a qualified indorsement." (*Id.* at pp. 50-51.) Other Court of Appeal decisions were in accord (*Mathes v. Bangs, supra,* 128 Cal.App. at p. 172 [" 'all of my right, title and interest' "]; *Kane v. Eastman* (1931) 110 Cal.App. 753, 757 [295 P. 63] [" 'all my/our right, title, interest' "]; cf. *Title Ins. & T. Co. v. Bandini Estate Co.* (1938) 26 Cal.App.2d 157, 159-163 [79 P.2d 141] [bare words of assignment general but qualified when augmented by intent to pass only right, title and interest]), except where irreconcilable contrary language also appeared (*Kingsbury v. Whitacre* (1934) 1 Cal.App.2d 100, 101-104 [36 P.2d 241] [transfer of " 'all rights' " but with waived " 'presentment, demand, notice, protest and notice of protest,' " as would be required to hold a general indorser liable under Civ. Code, former § 3147]; *Quinn v. Rike* (1920) 50 Cal.App. 243, 244-245 [194 P. 761] [substantially similar language]).

During this time, the Supreme Court twice confronted but never disapproved that NIL precedent. In fact, it approved the source decision, *Hammond Lumber,* in *Cristina v. Mattenberger* (1931) 212 Cal. 670 [300 P. 450] (*Cristina*), where an indorser had opted to " ' "guarantee that this is a good, valid and subsisting promissory note" ' " (*id.* at p. 674). The court held that the full circumstances were ambiguous and thus supported the admission at trial of extrinsic evidence showing a qualified indorsement and mere assignment (*id.* at pp. 675-676). The court further considered whether the ambiguity was fatal under then section 3144, which required one to " 'clearly indicate[] by appropriate words' " any intention to be bound *other than* as a general indorser. (*Cristina, supra,* 212 Cal. at p. 677; Stats. 1917, ch. 751, § 1, p. 1542.) The court adopted a minority position of no indorser liability, persuaded by *Hammond Lumber,* a case "decided prior to our enactment of the uniform law [NIL], but under a statute substantially the same as the present section 3144 . . . ." (*Cristina, supra,* at p. 677.) It held: "In view of the confusion in the holdings in other jurisdictions, and the absence of any controlling provision in our present statutes, we are not disposed to overrule that case." (*Id.* at pp. 677-678.) Thus the court approved a case finding qualified indorsement in an assignment of " 'all of our interest in this

promissory note' " (*Hammond Lumber, supra*, 36 Cal.App. at p. 431), language less specific than the "all right, title and interest" language presented by the Bond note. Our high court having spoken, the decision is a matter of stare decisis for us, an intermediate appellate court, as well as for the trial court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), unless, of course, we are ultimately persuaded by Gaetani that intervening changes in the statutory law have undermined *Cristina*.

The Supreme Court visited the subject again three years later, in *Adolph Ramish, Inc. v. Woodruff, supra*, 2 Cal.2d 190 (*Adolph Ramish*), but this time only peripherally. The words of indorsement were, " ' "I hereby waive presentation of the within note to the maker, demand of payment, protest and notice of non-payment, and do guarantee payment[,]" ' " and the issue was whether this amounted not to " 'a commercial [i]ndorsement [but] a mere guaranty [that did not] operate as a transfer which cuts off the defenses of the maker.' " (*Id.* at p. 195.) The court stressed the dual aspects of indorsement—" 'first, the passage of title to the transferee, and, second, the liability incurred by the transferor who has made the guaranty' "—but emphasized, " 'We are here concerned with the first only . . . .' " (*Ibid.*) ▮ It then examined authority from other jurisdictions and adopted the majority view that words of guaranty do not constitute a mere assignment but, rather, make the holder one in due course, free from equities and defenses the maker may have against the payee. (*Id.* at pp. 195-200.) This view was deemed both better reasoned and better policy, as it promoted the free circulation of commercial paper, within the spirit and purpose of the NIL. (*Id.* at p. 199.)

While not directly addressing indorser liability, *Adolph Ramish* did comment on that case law, notably *Hammond Lumber* and *Cristina*, the latter of which had involved language of guaranty. In all of them, the court noted, " 'the action was instituted for the purpose of enforcing the liability of the endorser, so the aspect of endorsement with which we are primarily concerned was not immediately involved. Nevertheless, [two cases, *Cristina* and *Hammond Lumber*,] recognize and utilize, as the test of whether the undertaking constitutes a general endorsement, the intention of the transferor to assume the obligations of a general endorser. It would seem that this test could equally well be applied to an undertaking which operated to extend the liability of the transferor beyond that of the ordinary endorser in blank. Words of guaranty being words of enlargement rather than words of limitation, it may fairly be inferred that the transferor's intent was to assume the burdens of endorsement and, in addition, the unconditional liability of one who guarantees payment. This is the view of the majority and of the more

recent cases.' " (*Adolph Ramish, supra,* 2 Cal.2d at p. 196.) The court ultimately adopted the majority view that words of guaranty enlarge liability but do not impair negotiability; that is, they have the effect, for negotiability purposes, of an indorsement " 'in blank' " (*id.* at p. 200).[1] ██ The court did not cast doubt on the precedent that indorsement words assigning all of one's right, title and interest are the equivalent of an indorsement "without recourse."

Thus while *Adolph Ramish, supra,* 2 Cal.2d 190, casts doubt on any prior case holdings intimating that words of assignment effect less than a full negotiation, it leaves undisturbed all holdings on indorser liability—that the use of assignment language may be equivalent to indorsing without recourse. The court here correctly assumed that the assignment language did not impair negotiability; this was implicit in the stipulated facts.

Gaetani apparently concedes that he is without recourse in this case if that precedent—what we will call the *Hammond Lumber* cases—remained good law at the time of Goss's indorsement of the Bond note. His argument, however, is that the 1963 adoption of the California Uniform Commercial Code (hereafter sometimes UCC) abrogated that precedent. We will reject the argument.

## B. *The UCC of 1963*

In the nearly four decades since adoption of the UCC, no California decision has questioned the continuing vitality of the *Hammond Lumber* cases. Given the vast number of promissory notes and other instruments presumably indorsed over that time, the nearly eight decades of unquestioned case authority and the certain reliance on that authority by the public, it seems fantastic that such a change in the law could have escaped the notice of an appellate court somewhere. Nevertheless, we proceed to examine the UCC and the reams of interpretive materials in our record. We, like the trial court, take judicial notice of these materials, most furnished by the commercial firm, the Legislative Intent Service. (*Commodore Home Systems, Inc. v. Superior Court* (1982) 32 Cal.3d 211, 219 [185 Cal.Rptr. 270, 649 P.2d 912]; *Fendrich v. Van de Kamp* (1986) 182 Cal.App.3d 246, 254 & fn. 5 [227 Cal.Rptr. 262].)

---

[1]By "in blank" the court apparently meant not just a lack of specified indorsee (Civ. Code, former § 3115; Stats. 1917, ch. 751, § 1, p. 1538) but also a lack of intent to be bound in any manner *other than* as an indorser. (*Adolph Ramish, supra,* 2 Cal.2d at p. 199, citing Civ. Code, former § 3144.) Specifically at issue was whether the language showed an intent to be a mere guarantor. (*Adolph Ramish, supra,* at p. 195.)

Familiar canons guide our search for meaning. ■ We examine first the statutory language, giving meaning to every word and phrase to accomplish a result consistent with the legislative purpose, i.e., the object to be achieved and the evil to be prevented (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873]), and reconciling wherever possible potentially conflicting provisions. A construction that makes sense of an apparent inconsistency is preferred over one that renders statutory language useless or meaningless. (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].) Only when the language remains unclear or ambiguous by those standards may we resort to other indicia of legislative intent. (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996].) We generally presume the Legislature is aware of appellate court decisions (*Harris v. Capital Growth Investors XIV, supra*, at p. 1155) and do not presume that the Legislature, in the enactment of statutes, intends to overthrow long-established principles of law unless such an intention is made clear by declaration or necessary implication (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234]; *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449]).

The California Uniform Commercial Code was enacted in 1963 (Stats. 1963, ch. 819, § 1, p. 1849), to become effective January 1, 1965, and its division 3 (commercial paper), comprised of former sections 3101 through 3805, replaced the NIL as formerly codified in the Civil Code. (Stats. 1963, ch. 819, §§ 1-2, pp. 1849, 1891-1916, 1996-1997.) Key to this appeal are former sections 3202 and 3414 of the Uniform Commercial Code *as enacted in 1963*, (all unspecified further section references are to that version of the code) for the code underwent major revisions in 1992 that repealed division 3, including former sections 3202 and 3414. (Stats. 1992, ch. 914, §§ 5-6, p. 4346; see current Cal. U. Com. Code, § 3204.)

■ We start with section 3414, subdivision (1) (hereafter section 3414(1)), for it preserved the equivalency rule, in these words: "Unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser . . . ." (Stats. 1963, ch. 819, § 1, p. 1905.) By the plain meaning of those words, the equivalency rule was preserved. The phrase "such words as 'without recourse' " (*ibid.*) appeared essentially the same as the predecessor NIL phrase, " 'without recourse,' or any words of similar import" (Civ. Code, former § 3119; Stats. 1917, ch. 751, § 1, p. 1539). The remainder of the subdivision

restated, with some alterations, the indorser-liability language found in Civil Code former section 3147. (Stats. 1917, ch. 751, § 1, pp. 1542-1543.) From section 3414(1), it firmly appears that the *Hammond Lumber* cases, developing for our state the law on what constitutes words *of similar import* to (or now, *such as*) "without recourse," were not displaced and remained good law. We recall that we should not presume the Legislature intends to overthrow long-established principles of law unless such an intention is *made clear by declaration or necessary implication. (Theodor v. Superior Court, supra,* 8 Cal.3d at p. 92; *Fuentes v. Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 7.) No such declaration or necessary implication appeared in the language of section 3414(1). While the plain meaning leaves no need to look beyond the statutory language, doing so reinforces our conclusion. The California Code comment stated for that section: "Subdivision (1) continues the right of an indorser under Civil Code former § 3119 to limit his liability by using such words as 'without recourse.'" (Cal. U. Com. Code com. 1, 23B West's Ann. Cal. U. Com. Code (1964 ed.) foll. former § 3414, p. 351.) Nothing in the comment suggested a change in the established case law applying the equivalency rule.

But Gaetani, seeming to concede survival of the equivalency rule itself, insists that cases specifically giving equivalent effect to language of assignment (if not other words) were undermined by section 3202. It provided: "(1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.

"(2) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

"(3) An indorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it purports to be of less it operates only as a partial assignment.

"(4) *Words of assignment*, condition, waiver, guaranty, limitation or disclaimer of liability and the like *accompanying an indorsement do not affect its character as an indorsement*." (Stats. 1963, ch. 819, § 1, p. 1898, italics added.)

Gaetani relies on former section 3202, subdivision (4) of the section (hereafter section 3202(4)), but we reject his argument on every level of interpretation—first, based on plain meaning. It is true that the phrase

*"character as an indorsement"* does not specify whether the unaffected *character* includes only negotiability or, as Gaetani insists, the indorser-liability aspect as well. However, we must read that provision not in isolation but in light of the entire scheme and considering the nature and purpose of the enactment. (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777 [63 Cal.Rptr.2d 859, 937 P.2d 290]; § 1102, subd. (1).) We should not give one provision a meaning that renders another meaningless. (*Wells v. Marina City Properties, Inc., supra,* 29 Cal.3d at p. 788.) Gaetani's interpretation of section 3202(4) as speaking to indorser-liability would nullify section 3414(1), which stated that an indorser could limit liability by using "such words as 'without recourse.'" He would have us read section 3202(4) as making such a limitation impossible. If "[w]ords of assignment" do not affect indorser liability, then, from further on in the same sentence, neither do words of "limitation or disclaimer of liability and the like . . ." (§ 3202(4)). The purpose of allowing indorsers to limit liability would be lost, incidentally inhibiting "the continued expansion of commercial practices through . . . agreement of the parties" (§ 1102, subd. (2)(b)), an overriding policy goal of the legislation. Plainly from context, section 3202 speaks to the negotiability aspect of indorsement, not indorser liability. Also, section 3202 was found in chapter 2, titled "Transfer and Negotiation" whereas section 3414 was found in chapter 4, titled "Liability of Parties." (Stats. 1963, ch. 819, § 1, pp. 1898, 1902, 1905.) Section 3202 expanded upon our Supreme Court's decision in *Adolph Ramish, supra,* 2 Cal.2d 190, where the policy goal of free transfer was promoted by giving an indorser's words of assignment no effect on negotiability.

Were there any need to look beyond plain meaning, we would find strong support for our view in these parts of the Official Comments on the Uniform Commercial Code former section 3202: "5. Subsection (4) is intended to reject decisions holding that the addition of such words as 'I hereby assign all my right, title and interest in the within note' prevents the signature from operating as an indorsement. Such words usually are added by laymen out of an excess of caution and a desire to indicate formally that the instrument is conveyed, rather than with any intent to limit the effect of the signature. [¶] 6. Subsection (4) is also intended to reject decisions which have held that the addition of 'I guarantee payment' indicates an intention not to indorse but merely to guarantee. Any signature with such added words is an indorsement, and if it is made by a holder is effective for negotiation; but the liability of the indorser may be affected by the words of guarantee as provided in the section on the contract of a guarantor. (Section 3—416.)" (Official Comments on U. Com. Code, coms. 5 & 6, 23B West's Ann. Cal. U. Com. Code, *supra,* foll. § 3202, p. 113.) If enlarging words of guarantee

could alter liability (§ 3416; Stats. 1963, ch. 819, § 1, pp. 1905-1906), then, presumably, so could words of limitation. The code so provided in section 3414(4).

Gaetani stresses a single comment from a subcommittee of the State Bar. We set it out as quoted in this extended excerpt from the California code comment on section 3202(4), which noted that the comment was at odds with other sources: "4. Subdivision (4) is new statutory law. See Official comments 5 and 6 for an explanation of the intent. There is a difference of opinion as to its effect upon prior California law, due more likely to the factual variety of the cases and the courts['] view of the parties' intent than to a difference in principle.

"The Legislative Counsel states that:

" 'Subdivision (4) is new statutory law, although perhaps the California case law is in accord. See Adolph Ramish Inc. v. Woodruff, 2 Cal.2d 190 . . . .' Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary (1959-1961) Part 1, The Uniform Commercial Code, p. 70.

"The sub-committee of the State Bar on Article [Division] 3 comments to the effect that:

" 'This section makes it clear that words of assignment or guaranty do not affect an endorsement as such. This probably changes California law as found in such cases as Kern v. Henry, 138 Cal.App. 46 (1934), holding that words of assignment make the endorsement a qualified endorsement.' Sixth Progress Report to the Legislature by Senate Fact Finding Committee on Judiciary (1959-1961) Part 1, The Uniform Commercial Code p. 345.

"The State Bar Committee on the Commercial Code in its special report states:

" 'Section 13202 [3202] provides that words of "assignment, condition, waiver, guaranty, limitation or disclaimer of liability and the like" accompanying an indorsement do not affect its character as an indorsement. This would reject decisions such as those in California holding that the addition of words of assignment prevent a signature from operating as an indorsement. [*Fn.*: Title Insurance & Trust Co. v. Bandini Estate Co., 26 C.A.2d 157 . . . (1938); see also, Kern v. Henry, 138 Cal.App. 46 . . . (1934)].' California State Bar Committee on the Commercial Code, A Special Report, The Uniform Commercial Code, 37 Calif.State Bar J. 161 (March-April 1962).

"An extended discussion of the problem and analysis of American decisions is presented in Ramish (Adolph) Inc., v. Woodruff, 2 Cal.2d 190 . . . , 96 A.L.R. 1146 (1934)." (Cal. U. Com. Code com. 4, 23B West's Ann. U. Com. Code, *supra*, foll. § 3202, pp. 111-112.)

We find the State Bar subcommittee comment mystifying. Section 3202(4) did provide that words of assignment or guaranty do not affect *endorsement as such*, but we cannot agree that this "probably change[d] California law" as found in cases like *Kern v. Henry, supra*, 138 Cal.App. 46 (*Kern*). (Cal. U. Com. Code com. 4, 23B West's Ann. U. Com. Code, *supra*, foll. § 3202, p. 111.) *Kern* did hold that words of assignment effected a qualified indorsement, despite *"without recourse"* language having been stricken during the transaction (*Kern, supra*, 138 Cal.App. at pp. 50-51); section 3202(4), however, did not speak to indorser liability, only to negotiability. The subcommittee simply got it wrong, and its comment was evidently the sole source of the "difference of opinion" noted in the Official Comment excerpt quoted above. Other observations in the excerpt appear valid. Section 3202(4), we have already observed, did accord with the Supreme Court's decision in *Adolph Ramish* by not letting words of guaranty impair negotiability (*Adolph Ramish, supra*, 2 Cal.2d at pp. 195-200), and so the Legislative Counsel's comment was correct. Likewise, the special report by the State Bar Committee on the Commercial Code correctly concluded that section 3202 would run contrary to any California cases holding that words of assignment prevented a signature from operating as an indorsement. The sole case cited directly by the subcommittee as an example of such holdings had seemingly so held, albeit after citing *Hammond Lumber* and *Cristina*, on indorser liability. (*Title Ins. & T. Co. v. Bandini Estate Co., supra*, 26 Cal.App.2d at pp. 162-163; see now *Security Pacific Nat. Bank v. Chess* (1976) 58 Cal.App.3d 555, 560 [129 Cal.Rptr. 852].) The subcommittee's citation to *Kern, supra*, 138 Cal.App. 46, which had not directly involved negotiability, was appropriately prefaced with "see also," for it was not directly on point.

The legislative history brought to our attention in this case is voluminous, and the key support for Gaetani's position comes from the State Bar subcommittee report, which is plainly incorrect. Judge Saldamando gave an apt response. Citing the rule against presuming an intent to overthrow long-established principles of law unless this is made clear by necessary implication (*Theodor v. Superior Court, supra*, 8 Cal.3d at p. 92; *Fuentes v. Workers' Comp. Appeals Bd., supra*, 16 Cal.3d at p. 7), he wrote, "This court cannot find that legislative silence in response to a non-legislative subcommittee opinion regarding the probable consequence of a statute on the

continued viability of existing case law 'necessarily implies' an intent to invalidate such case law."[2] We concur.

Out-of-state cases offered by Gaetani illustrate that some jurisdictions do not find qualified indorsements from assignment language like that used in the Bond note (e.g., *Potter v. Smith* (Fla.Dist.Ct.App. 1963) 152 So.2d 513, 514), but our Supreme Court recognized 70 years ago that California was in the minority in this regard yet still endorsed our case law (*Cristina, supra,* 212 Cal. at pp. 677-678). Also, the Uniform Commercial Code in 1963 stated, "Unless displaced by the particular provisions of this code, the principles of law and equity . . . shall supplement its provisions." (§ 1103; Stats. 1963, ch. 819, § 1, p. 1850.) This shows that the UCC drafters, despite a stated goal "[t]o make uniform the law among the various jurisdictions" (§ 1102, subd. (c); Stats. 1963, ch. 819, § 1, p. 1849), expected there to be differences from one jurisdiction to the next. Since they elected not to specify the meaning of "such words as 'without recourse' " (§ 3414(1)), we conclude that the continued vitality of the *Hammond Lumber* cases does not offend UCC policy.

The parties' citations to UCC treatises and law review articles are not helpful on the question of legislative intent, for there is no showing that legislators had any of those sources before them in 1963.

We hold that the *Hammond Lumber* cases were binding on the trial court under the 1963 Uniform Commercial Code and were properly followed.

In what we perceive as an alternative argument, Gaetani claims that the existence of "without recourse" language on two of the notes in this transaction, contrasted with the absence of them on the Bond note, shows the

---

[2]The court's reference to "legislative silence" also appears to allude to a cited report recommendation by a Senate factfinding committee issued two years before California's adoption of the UCC. The parties do not mention it, but the report, anticipating blurring of the twin aspects of indorsement as presented in this appeal, stated about the proposed section 3203: "S[ubdivis]ion 4 provides:

" 'Words of assignment, condition, waiver, guaranty, limitation or disclaimer of liability and the like accompanying an endorsement do not effect [*sic*] its character as an endorsement.'

"The 'character' of an endorsement may be partially of transfer and partially of warranty. It may be desirable to clarify the 4th paragraph so as to show that words of disclaimer, etc. are effective to limit the warranty aspect of an endorsement. The change could be the addition of the phrase:

" 'Except as provided in Sec. 13414.' " (Sixth Progress Rep. to Leg. by Sen. Fact Finding Com. on Judiciary (1959-1961) pt. 1, The Cal. U. Com. Code, p. 351.)

As Judge Saldamando noted, we know nothing more about this recommendation than that it was ultimately not followed. Most likely, we think, the change was thought unnecessary given the clarity of section 3414(1). The fact that it was recommended, however, does support that sections 3202(4) and 3414(1) were meant to coexist in the manner we have held above.

Bond note indorsement was *not* meant to be qualified, despite the assignment language. We reject this argument. Gaetani does not show that he raised it below, and Judge Saldamondo seems to have felt it was not at issue. A footnote in his statement of decision reads: "Goss also transferred two other unsecured promissory notes which were indorsed 'without recourse' by Supanich . . . . Payment of these two notes is not at issue in the present case. Goss does not argue that those notes are circumstantial evidence that Supanich also intended that the note at issue in this case be without recourse." If Goss did not ask for a without-recourse inference, it stands to reason that Gaetani did not ask for the obverse inference. A related reason not to address Gaetani's claim is that it necessarily involves questions of extrinsic evidence that Judge Saldamando did not adjudicate below and that Gaetani does not brief here.

II. *The Fees Award**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.

---

*See footnote, *ante*, page 1118.